CC-1998-371                                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lionel Lugo Rodríguez<br>      Recurrente<br><br>      v.<br><br>Junta de Planificación<br>      Recurrida | Certiorari<br><br>2000 TSPR 3 |

Número del Caso: CC-1998-0371

Fecha: 12/01/2000

Tribunal de Circuito de Apelaciones: Circuito Regional VI

Juez Ponente: Hon. Roberto González Rivera

Abogados de la Parte Peticionaria: Lcdo. Daniel Martínez Oquendo

Abogados de la Parte Recurrida: Lcdo. Lizardo W. Mattei Román

Materia: Consulta de Ubicación

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lionel Lugo Rodríguez

    Recurrente

       v.                              CC-1998-371        Certiorari

Junta de Planificación

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 12 de enero de 2000.

El Sr. Lionel Lugo Rodríguez (en adelante el recurrente) acude ante nos mediante *certiorari*. Solicita que expidamos el auto y revoquemos la Resolución del Tribunal de Circuito de Apelaciones, Circuito Regional VI de Caguas, Humacao y Guayama, de 31 de marzo de 1998, mediante la cual desestimó un recurso de revisión por entender que no se perfeccionó conforme a la ley, al no notificar el recurrente con copia del recurso a todas las partes en el caso.

I

El recurrente, por conducto del arquitecto Ernesto Gómez Sampera, sometió a la consideración

de la Junta de Planificación de Puerto Rico (en adelante la Junta) una consulta de ubicación[1], la cual proponía el desarrollo de un proyecto comercial sub-regional compuesto de tres (3) edificios, uno independiente de 13,500 pies cuadrados y dos (2) unidos de 42,900 y 70,900 pies cuadrados, para un total de 126,900 pies cuadrados, a ser utilizados como área de ventas y almacén en el Barrio Machete de Guayama.

El predio de terreno donde ubicaría el proyecto tiene cabida de 9.27 cuerdas y radica en un distrito de baja densidad poblacional (R-1), conforme al vigente mapa de zonificación de Guayama. Está delimitado por el norte con la carretera estatal núm. 54; por el sur y oeste con terrenos propiedad de la Sucesión M. Bruno y/o G. Cautiño Bruno; y por el este con terrenos propiedad de la Universidad Católica. La finca es de topografía semi-llana y ubica en zona inundable (Zona 2), de acuerdo a la hoja número 55A del mapa de zonas inundables.

El 28 de octubre de 1996, se celebró una vista pública con el propósito de dilucidar los planteamientos y la prueba de las partes interesadas y/o posiblemente afectadas por el desarrollo del referido proyecto.

A la misma comparecieron a oponerse el Sr. Ricardo Requero; el Ing. César Vázquez, en representación de Plaza Guayama Shopping Center; la Lcda. Milagros Pérez de Agostini, en representación de los dueños de farmacias de Guayama; el Sr. Reynaldo Haddock, en representación de la Asociación de Comerciantes Unidos de Guayama, Inc.; el Sr. Marcos Vázquez -sustituyendo al señor Héctor Sánchez-, en representación de Costa Azul Estates, Inc.; y el Sr. Juan Cosme.

Posteriormente, en noviembre de 1996, el Sr. Reynaldo Haddock, representando la Asociación de Comerciantes Unidos de Guayama, Inc., el Ing. César Vázquez, representando a Plaza Guayama Shopping Center; el Sr. Héctor Sánchez, representando a Costa Azul Estates, Inc.; y el Sr. José M. Duprey, representando al Centro Unido de Detallistas de Puerto Rico, presentaron sus ponencias ante la Junta.[2]

La Junta, mediante resolución de 27 de noviembre de 1996, archivada en autos y notificada el 22 de enero de 1997, decretó un suspenso de treinta (30) días hasta tanto la parte proponente, aquí recurrente, replicara a los referidos escritos. A esos fines, el 13 de enero de 1997, el consultor Mariano A. Romaguera, a instancias del recurrente, preparó un documento comentando las ponencias de los opositores y lo presentó ante la Junta el 17 de enero del mismo año.[3]

El 16 de mayo de 1997, luego de evaluar la información suministrada por las partes, así como las disposiciones de leyes, reglamentos y normas de planificación vigentes, y el resultado del estudio desde el punto de vista ambiental, la Junta denegó la consulta.[4] Sostuvo que el proyecto propuesto no era viable en dicho terreno puesto que: crearía un efecto acumulativo sobre la infraestructura; el área propuesta actualmente goza de usos comerciales adecuados; los terrenos ubican en zona inundable, sin niveles; y el proyecto no cumple con los objetivos y política pública del plan de usos de terrenos de Puerto Rico.

---

[1] Consulta número 96-71-0661-JPU.

[2] En adelante nos referiremos a ellos como "los opositores".

[3] Véase, Apéndice, pág. 214.

[4] La resolución fue archivada en autos y notificada, entre otros, a los opositores el 17 de junio de 1997. Véase, Alegato de la Junta, Anejo 3, págs. 81, 120, 123 y 125.

No conforme, el 7 de julio de 1997, el recurrente, por conducto del licenciado Daniel Martínez Oquendo, presentó moción de reconsideración ante la Junta, y certificó haberla notificado a la Administración de Reglamentos y Permisos (en adelante la A.R.P.E.) y a los opositores. El 22 del mismo mes y año, la Junta acogió dicha moción y, el 4 de noviembre de 1997, luego de prorrogar el término para resolver la moción a tenor con la sección 3.15 de la Ley Núm. 170 del 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme (en adelante L.P.A.U.), 3 L.P.R.A sec. 2165[5], se reiteró en su determinación previa denegando la consulta que nos ocupa.[6]

Así las cosas, el 4 de diciembre de 1997, el recurrente presentó recurso de revisión ante el Tribunal de Circuito de Apelaciones. Notificó con copia del recurso únicamente a la Junta. El 23 de diciembre de 1997, notificada el 20 de enero de 1998, el tribunal apelativo emitió resolución concediéndole a la Junta veinte (20) días para exponer su posición y ordenó a las partes que mostraran causa por la cual no debía desestimar por falta de cumplimiento con el requisito de notificación que dispone la L.P.A.U.

La Junta compareció el 6 de febrero de 1998 mediante escrito titulado "Moción de Desestimación y/o en Oposición a que se Expida Recurso de Revisión". Sostuvo que el tribunal apelativo carece de jurisdicción para entender en el presente caso, toda vez que el recurrente no notificó el recurso de revisión a todas las partes dentro del término establecido por ley.

El 9 de febrero del mismo año, el recurrente compareció en cumplimiento de orden, arguyendo que durante el trámite administrativo no medió solicitud de intervención alguna, por lo que ningún participante actuó en calidad de parte.

El 31 de marzo de 1998[7], el tribunal apelativo emitió resolución desestimando el recurso por entender que los ciudadanos o entidades que se opusieron al proyecto eran "parte" dentro del contexto de la sección 1.3 de la L.P.A.U.[8] y que, por ende, el recurrente debió notificarles dentro del término jurisdiccional, la presentación del recurso de revisión.

Inconforme, el 12 de mayo de 1998, el recurrente acude ante nos mediante petición de *certiorari*. Señala que:

---

[5] Dispone: "[...] Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la

continúa...

[5]...continuación

revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo  que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales."

[6] La resolución fue archivada en autos y notificada, entre otros, a los opositores, el 14 de noviembre de 1997. Véase, Alegato de la Junta, Anejo 1, págs. 8, 11, 13 y 51.

[7] Archivada en autos y notificada el 13 de abril de 1998.

[8] 3 L.P.R.A. sec. 2102(j).

Erró el Tribunal de Circuito de Apelaciones al desestimar el Recurso de Revisión de la Recurrente por alegadamente no haberse perfeccionado el mismo apesar [sic] de que dicha parte notificó con copia del escrito a la única otra parte en el pr[o]cedimiento administrativo, la JP, conforme a lo dispuesto en la Ley de Procedimiento Administrativo Uniforme.

El 7 de agosto de 1998, notificada el día 11 del mismo mes y año, emitimos resolución expidiendo auto de *certiorari*. Ante la comparecencia de ambas partes, estamos preparados para resolver.

II

La sección 4.2 de la L.P.A.U., *supra*, 3 L.P.R.A. sec. 2172, dispone que:

Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de 30 días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. **La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión**. La notificación podrá hacerse por correo. (Enfasis nuestro.)

Ahora bien, la sección 1.3 de la L.P.A.U., *supra*, define "parte" como:

[...] toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento.

La sección 3.5 de la L.P.A.U., 3 L.P.R.A. sec. 2155, dispone lo siguiente con respecto a la intervención:

Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su

discreción, tomando en consideración entre otros los siguientes factores:

(a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

(b) Que no existan otros medios en derecho para que el peticionado pueda proteger adecuadamente su interés.

(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención.

En *Constructora I. Meléndez, S.E. v. Junta de Subastas de D.T.O.P.*, Opinión de 14 de octubre de 1998, 98 T.S.P.R. 132, 98 J.T.S. 134, catalogamos de abarcadora la definición de "parte" establecida en la sección 1.3 de la L.P.A.U., *supra*. Además, clasificamos el contenido del dictamen final de la agencia un factor importante al determinar si una persona es "parte" en un procedimiento administrativo. A esos efectos señalamos que:

"[...] es muy ilustrativo el comentario a la Regla 58 del Reglamento del Tribunal de Circuito de Apelaciones, *supra*, al señalar que la notificación del recurso de revisión debe ser hecha a todas las partes así reconocidas en 'la disposición final administrativa de que se trate. 4 L.P.R.A. Ap. XXII-A, R.58 (Supl.1997).' Por ello, se le debe de prestar particular atención al contenido de la disposición final administrativa, como un factor importante, a la hora de determinar si una persona, natural o jurídica, es 'parte' en un procedimiento administrativo a los fines de notificarle el recurso de revisión judicial." *Id*. págs. 156-157.

Por otra parte, nos comenta el Profesor Demetrio Fernández Quiñones, en Derecho Administrativo y Ley Uniforme de Procedimientos Administrativos, Forum, 1993, pág. 159, que "[...]es parte aquel que puede demostrar el efecto adverso de la

acción administrativa o cómo la inacción del proceso administrativo le puede causar menoscabo a sus derechos".

A los fines de distinguir entre un participante y un interventor, Fernández Quiñones[9] añade que:

> [l]a función del participante se limita al papel que ha solicitado desempeñar, es decir, ser testigo, 'amigo de la corte', suplir evidencia documental o prestar una argumentación de carácter oral. Por el contrario, la solicitud de interventor va más lejos y le asegura una participación más plena en el procedimiento, la cual se encuentra avalada por el reconocimiento de que posee un derecho.

La ley es clara al señalar que son "parte" el promovente, el promovido, el interventor y aquél designado como tal. Sin embargo, la controversia surge en cuanto a aquellos que puedan reclamar ser partes pero que no caigan dentro de las mencionadas categorías.

En el ámbito federal, el Federal Administrative Procedure Act, 5 U.S.C.A. sec. 551 *et seq.*, define "parte" como:

> (1)...
> (2)...
> (3) "party" includes a person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in an agency proceeding, and a person or agency admitted by an agency as a party for limited purposes.

En cuanto a quiénes tienen derecho a participar en las vistas administrativas, el tratadista Bernard Schwartz sostiene que:

> "[t]he need to broaden participation in the hearing process has led the courts to adopt an increasingly generous answer to the question of who has a right to appear as a 'party in interest' before an agency...
>
> The right of the 'obvious party' (the person whose rights and obligations are directly affected by the agency act) to appear and be heard presents little problem. The agency act may, however, have impact beyond those at whom its action is directed...

---

[9] *Ibid.*, pág. 161.

There has been a progressive broadening of the concept of 'party in interest' from the obvious party, to competitors, and then to the consuming public. The trend has not been uniform, but the dominant theme has been the public interest in opening administrative proceedings to wider participation...

[...] The notion of 'party in interest', said the court, should be construed to permit those seriously affected to participate in the administrative proceeding. The competitor is adversely affected by and is a 'party in interest' in agency orders affecting the matters to which the competition relates. Seabord & W. Airlines v. CAB, 181 F.2d 515, 518 (D.C. Cir. 1949), *cert. denied*, 339 U.S. 963 (1950). *See similarly* National Coal Assn. V. FPC, 191 F.2d 462, 466-467 (D.C. Cir. 1951)."[10]

Schwartz hace referencia a lo resuelto en *Office of Communication v. FCC*, 359 F.2d 994, 1003 (D.C. Cir. 1966), con respecto a una parte con interés e indica que:

"[...] The court conceded that previous cases had granted standing to intervene only to those alleging electrical interference or economic injury. But, asserted Judge Burger, the 'party in interest' concept is not limited to these categories. Economic injury is not the only injury that the law should recognize; nor should the interest of the competitor be protected, but not that of the consumer..."[11]

Por último, Schwartz señala que el derecho a participar en los procedimientos no debe circunscribirse a la parte contra quien se dirija la acción de la agencia. A esos fines manifiesta que:

"[t]he evolving law makes it no longer accurate to assert in agencies a discretionary power to exclude participation in their proceedings. The right to be heard may not be limited to the 'obvious party.' The competitor and the consumer must now be considered 'parties in interest' in cases that affect their competitive or consumer interests. They have a right to participate that may not be limited to the writing of letters or to second-class appearance as a matter of grace at hearings. The agency still possesses discretion to establish rules governing participation. Thus, it may lay down rules for determining which consumers or community representatives are to be allowed to participate; it may require consolidation of petitions and briefs to avoid multiplicity of parties and

---

[10] Schwartz, Administrative Law, 3rd. ed., Little, Brown and Co., 1991, págs. 295-296.
[11] *Ibid.*, pág. 297.

duplication of effort; and it may control the proceeding so that all participants are required to adhere to the issues and refrain from introducing cumulative or irrelevant evidence. But it may no longer completely exclude persons who have a substantial interest in the proceeding. 'Any interested person' now has the right to intervene in an agency proceeding 'so far as the orderly conduct of public business permits.' The controlling principle was stated by a federal court of appeals: 'Efficient and expeditious hearing should be achieved, not by excluding parties who have a right to participate, but by controlling the proceedings so that all parties are required to adhere to the issues and to refrain from introducing cumulative or irrelevant evidence.'(Escolios omitidos.)"[12]

En *American Communications Assn. v. United States,* 298 F.2d 648, 650 (2d Cir. 1962), la Corte de Apelaciones de los Estados Unidos para el Segundo Circuito expresó que lo más justo es que se le permita participar desde sus inicios a aquella parte que tenga un interés reconocido en el dictamen de la agencia. A esos efectos señala que:

> [w]e think that fairness requires that one with such a recognized interest in the outcome of the agency proceeding must be permitted to participate in it from the outset.

Por otra parte, la Corte de Distrito de los Estados Unidos para el Distrito de Alaska resolvió en *Anchorage Bldg. Trades Council v. Department of Housing and Urban Development,* D.C. Alaska 1974, 384 F. Supp. 1236, que:

> "Party" does not refer to a hypothetical party, but rather refers to a person actually participating in litigation or entitled of right to be admitted as a party.

Es menester aclarar que no todo aquel que provee información relacionada con la consulta de ubicación automáticamente pasa a ser "parte" en el proceso. Recientemente, en *Rivera Ramos v. Morales Blás,* Opinión de 2 de noviembre de 1999, 99 T.S.P.R. 167, 99 J.T.S. 170, señalamos que, en aras de tramitar y resolver una consulta de ubicación, la Junta de Planificación puede celebrar

---

[12] *Ibid.,* pág. 298.

vistas públicas o privadas a las cuales pueden comparecer las personas interesadas en expresarse en torno al proyecto propuesto.

También puede solicitar asesoramiento de entidades públicas o privadas. Sobre el particular, la sección 7.01 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación[13] dispone que:

> "[l]a Junta de Planificación consultará, cuando lo considere necesario, a cualquiera de los organismos gubernamentales, comisiones locales de planificación y otras entidades públicas y privadas que de alguna manera tengan relación con los proyectos bajo estudio [...]"

En *Rivera Ramos v. Morales Blás*, *supra*, pág. 348-349, sostuvimos que las entidades consultadas por la Junta de Planificación no necesariamente caen bajo la definición de "parte" contenida en la L.P.A.U. Por el contrario, aclaramos que "[s]u participación consiste mas [sic] bien en ilustrar a la Junta, en ayudarla a llevar a cabo su función de evaluar las consultas de ubicación y considerar la conveniencia o los perjuicios de los proyectos propuestos."

Ciertamente, de una simple lectura de la sección 1.3 de la L.P.A.U., *supra*, y de lo establecido en la jurisdicción federal, se colige que no sólo el promovente, el promovido, el interventor y aquél designado como tal se consideran "parte" en un procedimiento administrativo.

Además, son "parte" las personas cuyos derechos y obligaciones puedan verse adversamente afectados por la acción o inacción de la agencia y, que a su vez, participan activamente en los procedimientos administrativos.

A esos fines, distinguimos al participante activo de un mero participante. Según el Profesor Fernández Quiñones[14], un mero participante se limita a comparecer a la audiencia pública, sin

---

[13] Reglamento Núm. 5244 de 31 de mayo de 1995.

[14] Fernández Quiñones, op. cit., pág. 161

mayor intervención; o declara en la misma pero no demuestra interés ulterior en el asunto; o únicamente suple evidencia documental; o participa en calidad de *amicus curiae*.

Una participación activa, por el contrario, requiere una intervención más plena en el procedimiento. La persona ha de demostrar que tiene un interés reconocido en el dictamen de la agencia; comparece a la(s) vista(s) y presenta su posición oralmente y por escrito; y asume un rol activo en el proceso más allá de una mera participación como testigo o "amigo de la corte". Un participante activo es, pues, aquél que utiliza los remedios disponibles en aras de proteger su interés e interviene de forma tal en el proceso que resultaría injusto y arbitrario no considerarlo una "parte".

En resumen, a tenor con la sección 4.2 de la L.P.A.U., *supra*, son "parte" a las cuales es necesario notificar copia de un recurso de revisión judicial, (1) el promovente; (2) el promovido; (3) el interventor; (4) aquél que haya sido notificado de la determinación final de la agencia administrativa; (5) aquél que haya sido reconocido como "parte" en la disposición final administrativa; y (6) aquél que participa activamente durante el procedimiento administrativo y cuyos derechos y obligaciones puedan verse adversamente afectados por la acción o inacción de la agencia.

No son "parte" a quienes tenga que notificárseles copia de los recursos de revisión, (1) el mero participante; (2) el *amicus curiae*[15]; (3) aquél que comparece a la audiencia pública, sin mayor intervención; (4) aquél que únicamente declara en la vista, sin demostrar ulterior interés; (5) aquél que se limita a suplir evidencia documental; (6) aquél que no demuestre tener un interés

---

[15] Es doctrina establecida que el *amicus curiae* no puede convertirse en una parte del litigio. *Hernández Torres v. Hernández Colón*, 127 D.P.R. 974, 977 (1991).

que pueda verse adversamente afectado por el dictamen de la agencia.

En *Rivera Ramos v. Morales Blás*, *supra*, explicamos que una persona no tiene que solicitar intervención para ser considerada "parte" en un proceso administrativo. Basta con tener interés en el procedimiento, comparecer a las vistas para oponerse y demostrar su interés en formar parte del mismo.

Ante los hechos particulares de aquel caso, distinguimos entre un participante que se limitó a oponerse por escrito y otro que asumió un rol más activo en el proceso, a los fines de resolver si eran o no una "parte", a tenor con la L.P.A.U. Con respecto al primero, resolvimos que no era "parte" por cuanto no solicitó intervención, su participación se circunscribió a oponerse mediante carta y tampoco compareció a declarar en las vistas públicas.

No obstante, aún cuando el otro participante tampoco solicitó intervención, estuvimos de acuerdo con la determinación de la Junta de considerarlo una "parte". Veamos por qué.

Primeramente, al ser vecino del sector, entendimos que era obvio su interés en el pleito. En segundo lugar, al presentar una demanda de interdicto provisional y permanente solicitando la paralización de la obra, quedó demostrado su interés en formar parte del proceso.

Lo anterior, unido a su comparecencia a las audiencias públicas para oponerse al proyecto propuesto, lo convirtieron en un participante activo, y por ende en "parte", aún cuando no solicitó intervención formalmente.

En el caso de marras, el Ing. César Vázquez, en representación de Plaza Guayama Shopping Center; el Sr. Reynaldo Haddock, en representación de la Asociación de Comerciantes Unidos de Guayama, Inc; y el Sr. Marcos Vázquez, en representación de Costa Azul Estates, Inc. comparecieron a la vista celebrada el 28

de octubre de 1996 y expresaron su oposición al proyecto propuesto. Igualmente surge de los autos, que éstos, así como el Sr. José M. Duprey, en representación del Centro Unido de Detallistas de Puerto Rico, presentaron sus ponencias a la consulta en sus respectivas comunicaciones.

Además, la Junta, en su resolución del 27 de noviembre de 1996, ordenó al recurrente, entre otras cosas, replicar a las ponencias de los opositores y, para ello, dejó en suspenso la consulta hasta tanto éste sometiera la información solicitada. Asimismo, surge de los autos que la resolución de la Junta del 16 de mayo de 1997--denegando la consulta-- y la resolución del 4 de noviembre de 1997--reafirmando su denegatoria-- le fueron notificadas a los opositores el 17 de junio de 1997 y el 14 de noviembre de 1997, respectivamente.

Aún más, el recurrente certificó haber notificado su "Solicitud de Reconsideración" a A.R.P.E., y a los opositores.[16] De igual forma, le envió a los opositores copia de sus escritos titulados "Moción Solicitando Término para Someter Escrito" y "Breve Memorando en Apoyo de Consulta".[17] Ciertamente, si ambas partes notificaron sus escritos a los opositores, ello es indicio de que éstos los consideraban "parte" en el proceso.

Es cierto que no estamos en el caso de autos ante un grupo de participantes que presentaron solicitud formal de intervención. Tampoco se trata, sin embargo, de unos participantes que se limitaron a presentar un argumento oral o testimonio durante la vista pública. Los opositores demostraron interés en el asunto; comparecieron y declararon en la vista; sometieron sus ponencias; presentaron réplicas a la moción de reconsideración ante la Junta y fueron notificados de los escritos de las partes durante el

---

[16] Apéndice, págs. 20-21.

[17] Apéndice, págs. 63 y 84-85.

trámite administrativo. Concluimos que los opositores son participantes activos y, por ende, "partes" en el presente caso.

De conformidad con las pautas sentadas en *Constructora I. Meléndez, S.E. v. Junta de Subastas de D.T.O.P.,* *supra,* hoy reafirmadas, advertimos que las agencias administrativas deberán especificar en la certificación de sus resoluciones las partes a las cuales le notificaron su dictamen en calidad de "partes" en el procedimiento, a los fines de evitar confusiones, y para que puedan éstas ejercer efectivamente el derecho a la revisión judicial conferido por ley.

Finalmente, en *Martínez v. Departamento del Trabajo*, Opinión de 28 de mayo de 1998, 145 D.P.R. ___, 98 J.T.S. 63, sostuvimos que, de conformidad con la sección 4.2 de la L.P.A.U., *supra,* surge el claro propósito de fijar un procedimiento uniforme de revisión de las órdenes o determinaciones finales de las agencias administrativas y de que el recurso de revisión se perfeccione dentro del término de treinta (30) días. En lo pertinente opinamos que:

> [...] de un análisis de sus términos, los mismos denotan la intención legislativa de plasmar indubitadamente el requisito de que los recursos de revisión se perfeccionen y notifiquen dentro del término de treinta (30) días, siendo éste un requisito de carácter jurisdiccional. En consecuencia, la falta de notificación dentro del término prescrito por ley tiene el efecto de privar de jurisdicción a los tribunales. (citas omitidas).[18]

El recurrente presentó recurso de revisión ante el Tribunal de Circuito de Apelaciones, notificando copia de éste únicamente a la Junta. Reiteradamente hemos sostenido que el incumplimiento con el deber de notificar la solicitud de revisión judicial a todas las partes priva de jurisdicción al tribunal para entender en los méritos del recurso de revisión. *Constructora I. Meléndez, S.E. v. Junta de Subastas de D.T.O.P., supra; Olmeda Díaz v.*

*Depto. de Justicia,* Opinión de 27 de junio de 1997, 143 D.P.R. ___, 97 J.T.S. 105. Por ende, el no haber notificado a las demás partes, entiéndase los opositores, privó de jurisdicción al tribunal apelativo para entender en los méritos del recurso.

Expedido previamente el auto de certiorari, confirmamos el dictamen del Tribunal de Circuito de Apelaciones desestimando el recurso de revisión presentado por no haberse perfeccionado conforme a derecho.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RIO
Juez Asociado

---

[18] Véase, además, *Ortiz Quiñones v. A.R.P.E.*, Opinión de 9 de octubre de 1998, 98 T.S.P.R. 130, 98 J.T.S. 131.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lionel Lugo Rodríguez

    Recurrente

                           CC-1998-371

       v.

Junta de Planificación

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 12 de enero de 2000.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, confirmamos la sentencia del Tribunal de Circuito de Apelaciones emitida el 31 de marzo de 1998 que desestimó el recurso de revisión presentado ante sí por no haberse perfeccionado conforme a derecho.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente con opinión escrita; el Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Presidente señor Andréu García no interviene y el Juez Asociado señor Hernández Denton inhibido.

                        Isabel Llompart Zeno
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Lionel Lugo Rodríguez**

    **Recurrente**

      **vs.**              **CC-98-371**      **CERTIORARI**

**Junta de Planificación**

    **Recurrida**

**OPINION DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ**

**San Juan, Puerto Rico, a 12 de enero de 2000.**

La Opinión mayoritaria emitida por el Tribunal en el presente caso nos hace recordar el refrán pueblerino de que, en ocasiones, "el remedio resulta peor que la enfermedad".

Decimos lo anterior debido al hecho de que un somero análisis de la decisión mayoritaria hoy emitida demuestra que la misma, en lugar de simplificar y aclarar la controversia planteada en el caso, lo que hace es complicar la misma y crear una total confusión a nivel de instancia y en apelación, lo que tendrá el efecto nocivo de hacer inmanejable, de hoy en adelante, la situación específica a la que nos enfrentamos.

Lo realmente grave e incomprensible, sin embargo, es que dicha situación se puede evitar meramente siguiendo los términos, claros y sencillos del estatuto que controla la situación en lugar de incurrir en un craso acto de legislación judicial. Veamos.

I

El problema o controversia a resolver, esto es, quién es "parte" en un procedimiento administrativo, aun cuando relativamente sencillo, es extremadamente importante. Ello así ya que dependiendo de la contestación que brindemos depende, de manera principal, la solución de la interrogante de a quién viene obligado a notificar, no solo la agencia concernida de la decisión que ésta emita, sino que la "parte" que, sintiéndose perjudicada por la decisión administrativa emitida, decide acudir ante el foro judicial en revisión de la misma. El asunto, como es sabido, resulta neurálgico por cuanto si la parte recurrente no notifica con copia de su recurso a una "parte", el mismo será desestimado.

Como correctamente se señala en la Opinión mayoritaria, la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.)[19] requiere, en lo pertinente, que la "parte adversamente afectada por una orden o resolución final de una agencia", al presentar una solicitud de revisión ante el foro judicial correspondiente, notifique "...la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión". (Enfasis suplido.)

Ahí el problema planteado. Como es sabido, la gran mayoría de las decisiones que se emiten por las diferentes agencias administrativas en nuestra jurisdicción afectan a muchas personas; se exige, en consecuencia, que: éstas sean notificadas de la solicitud que presente al promovente de la acción ante la agencia, con el propósito obvio de

---

[19] **3 L.P.R.A. sec. 2172.**

que puedan, si así lo desean, comparecer a oponerse ante la agencia concernida; a la agencia igualmente se le requiere que notifique a todas las "partes" de su decisión; y la parte que pretenda revisar ante el foro judicial la decisión administrativa emitida viene en la obligación de notificar a todas las "partes". La ausencia de notificación a una "parte" puede conllevar la "nulidad" del procedimiento y/o la desestimación del recurso de revisión judicial que se radique.

Muchas de estas personas, aun cuando han sido notificadas, no comparecen ante la agencia; esto es, aun cuando pueden resultar afectadas por la decisión a emitirse, sencillamente <u>no</u> les importa. Otras, aun cuando comparecen, no participan propiamente en el procedimiento; otras, comparecen y participan agresivamente en el mismo.

El asunto tiene, repetimos, gran relevancia e importancia por cuanto, en un procedimiento en particular, pueden estar envueltas cientos de personas <u>y el requisito de notificación puede resultar extremadamente oneroso o gravoso para la agencia y/o para la parte que interese acudir al foro judicial en revisión de la decisión administrativa emitida</u>. La situación, no hay duda, <u>requiere el establecimiento de una norma clara, respecto a quién es "parte", la cual sea fácil de comprender y seguir</u>.

II

Ante esta situación, <u>¿qué hace la mayoría del Tribunal</u>? En un <u>craso</u> acto de legislación judicial, acompañado el mismo por un increíble malabarismo jurídico, crea una norma que es confusa y difícil de cumplir. <u>Veamos</u>.

Comienza la Mayoría por seguir, al pie de la letra, las disposiciones de la Sección 1.3 de la L.P.A.U., 3 L.P.R.A. sec. 2102(J), y reconoce que son "partes" en un procedimiento administrativo <u>las que allí se enumeran</u>. Procede, entonces, a

reconocer o crear, por arte de magia y/o fiat judicial, dos clases de participantes, a saber: el "participante activo" y el "mero participante", definiendo al primero como "aquél que participa activamente durante el procedimiento administrativo y cuyos derechos y obligaciones puedan verse adversamente afectados por la acción o inacción de la agencia".

La situación, naturalmente, se le complica a la Mayoría cuando intentan definir al mero participante. Nos informa la Mayoría que este mero participante, el cual no es parte, es: "(1) el mero participante; (2) ....; (3) aquél que comparece a la audiencia pública, sin mayor intervención; (4) aquél que únicamente declara en la vista, sin demostrar ulterior interés; (5) aquél que se limita a suplir evidencia documental; (6) aquél que no demuestra tener un interés que pueda verse adversamente afectado por el dictamen de la agencia."

Procede que uno se cuestione que criterios objetivos puede utilizar una persona --que se ve en la necesidad de determinar, so pena de desestimación de su recurso, quién es, o no, "parte" en un procedimiento administrativo-- para determinar qué persona compareció a la vista celebrada "sin mayor intervención"; quién declaró en la misma pero no demostró "ulterior interés"; quién no demostró "un interés que pueda verse adversamente afectado por el dictamen de la agencia"; quién, en fin, es un "mero participante". (Enfasis suplido.) Repetimos: "el remedio es peor que la enfermedad".

III

Lo verdaderamente triste, y sorprendente, de la decisión mayoritaria emitida es que el Tribunal, pudiendo hacerlo, no reconoce que la solución de la interrogante planteada la provee la propia L.P.A.U. Dicho estatuto, en su Sección 1.3, define adecuadamente quién es una "parte" en un procedimiento administrativo. Se expresa en dicha disposición legal, en lo pertinente, que:

> "...toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento."

Una vez se reconoce que esta disposición es la que rige el asunto, la solución a la controversia planteada, sobre quién es, o no, parte, en un procedimiento administrativo, resulta ser palmariamente fácil: aquella persona --que pueda resultar afectada por la decisión a ser emitida por la agencia administrativa; que verdaderamente tenga interés en participar y en ser considerada como parte; y que no se encuentre entre las personas específicamente enumeradas o mencionadas en la citada Sección 1.3-- deberá radicar un escrito ante la agencia en solicitud de intervención para poder ser considerada "parte" en el procedimiento o deberá ser reconocido como tal por la agencia administrativa de que se trate.[20]

Con el establecimiento de esta norma objetiva se evita cualquier problema o confusión. Solo se le requiere a la parte verdaderamente interesada que radique este escrito. Estamos seguros de que el que tenga verdadero interés en el asunto no tendrá mayor objeción a así hacerlo.

Con esta norma --clara, precisa y objetiva-- se evita que las personas tengan que estar adivinando sobre: quién tiene "ulterior interés" en el procedimiento; quién compareció a la vista pero tuvo menor o mayor intervención en la misma; quién no ha demostrado interés; y, en consecuencia, quién es, o no, "parte" en el mismo.

En resumen, disentimos por cuanto somos del criterio que la "norma" que hoy establece el Tribunal en el presente caso es una vaga y

---

[20] **La determinación sobre si esa persona es, o no, "parte", dependerá, naturalmente, de la decisión de la agencia concernida sobre si permite, o no, su intervención en el procedimiento; decisión que es revisable, tal como ocurrió en Rivera Ramos v. Morales Blás, res. el 2 de noviembre de 1999, 99 TSPR 167. En aquel caso la Junta de Planificación admitió al Sr. Acevedo Vilá como interventor, decisión que revisamos concluyendo que el mismo no cumplía con los requisitos esbozados para ser considerado interventor. En el caso de Morales Blás, ante, sin embargo, la Junta le reconoció como tal interventor y sujeto a nuestra revisión determinamos que efectivamente era acreedor de tal reconocimiento.**

difícil de cumplir y seguir; norma jurisprudencial que de estar plasmada en un estatuto sería declarada inconstitucional por razón de vaguedad.

La norma vaga y difícil de cumplir que establece el Tribunal atenta, incluso, contra el derecho de una persona "a tener su día en corte" ya que la misma obligará al peticionario en un recurso de revisión judicial a incluir como "parte" a todo el mundo en caso de duda; situación que puede resultar tan costosa y gravosa que efectivamente impida que éste pueda sufragar el costo del procedimiento de revisión judicial.


FRANCISCO REBOLLO LOPEZ
Juez Asociado