Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une el Juez Asociado Señor Rivera Pérez.
Disentimos de la opinión del Tribunal, ya que resulta incomprensible cómo una mayoría de este Foro altera y trastoca de forma perjudicial todo el ordenamiento admi-nistrativo referente al concepto de “parte” en una revisión judicial, al ampliar forzadamente el mismo y extenderlo a una entidad cuya alegada participación se limitó al envío de un número reducido de cartas ante las agencias concernidas. La Opinión del Tribunal opta por extender la normativa en cuestión en el caso de epígrafe a pesar de que las comunicaciones enviadas por la Comisión de Ciudada-nos al Rescate de Caimito (Comisión) a la Administración de Reglamentos y Permisos (ARPe) iban dirigidas, esen- *1022 cialmente, a impugnar una determinación final y firme de la Junta de Planificación en la cual se aprobaba la consulta de ubicación para el desarrollo en controversia.
Más aún, dicha opinión hace la injustificada extensión del concepto “parte” en un caso donde claramente aplica la doctrina de incuria ante la falta de diligencia demostrada por la Comisión en el ejercicio de sus derechos, al intentar impugnar los permisos en controversia cuarenta y cuatro meses luego de que la Junta de Planificación aprobara la consulta de ubicación, tres años después que ARPe apro-bara el anteproyecto y casi dos años luego de la aprobación del permiso de urbanización.
Igualmente, resulta sumamente preocupante e irrazo-nable el remedio concedido por el Tribunal en el caso de epígrafe. Luego de determinar erróneamente que la Comi-sión es parte en el procedimiento administrativo en cues-tión, el Tribunal deja sin efecto los permisos ya concedidos y ordena reabrir todo el procedimiento administrativo. In-dependientemente de cómo la Opinión del Tribunal llame el remedio concedido, en efecto se trata del remedio ex-traordinario del injunction y hoy la Opinión lo concede sin discutir los criterios para emitirlo. Tampoco toma en cuenta que este caso se encuentra ante la consideración del Tribunal desde el 2005 y el proyecto de vivienda ha estado paralizado desde entonces.
En momentos en que el país necesita de seguridad jurí-dica y confianza en las actuaciones de su gobierno, este Tribunal da un rudo golpe a la estabilidad de los procedi-mientos administrativos y del sistema de permisos. Sin duda, la norma que hoy adopta el Tribunal es capaz de producir la desestabilización de las relaciones jurídicas y erosionar la confianza en las determinaciones administra-tivas. Es por eso que nos vemos obligados a disentir enér-gicamente del curso decisorio seguido por la Opinión del Tribunal.
*1023 I
El 19 de enero de 2000, la Junta de Planificación aprobó una consulta de ubicación solicitada por el Sr. Gerardo I. Pérez Rivera (el Desarrollador). El proyecto de vivienda fue identificado como Paseo del Monte y consistía de ciento cuarenta y cuatro unidades familiares que ubican en el Sector Caimito de Río Piedras. La determinación de la Junta de Planificación en la que aprobó la consulta de ubi-cación fue notificada a todas las partes interesadas, incluso a la Comisión.
Oportunamente, la Comisión solicitó la reconsideración de la Resolución emitida por la Junta de Planificación y alegó que la aprobación del proyecto requería la celebra-ción de una vista administrativa y una notificación a los colindantes. El 15 de marzo de 2000, la Junta de Planifi-cación notificó a la Comisión una Resolución en la cual declaró “no ha lugar” la solicitud de reconsideración. En la misma, le advirtió de su derecho a solicitar revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta días. No obstante, la Comisión no recurrió y la de-terminación de la Junta de Planificación advino final y firme.
Posteriormente, el Desarrollador sometió el proyecto ante ARPe. Dicha agencia concedió el anteproyecto pro-puesto el 15 de agosto de 2000. A su vez, el 22 de agosto de 2001 aprobó una prórroga al mencionado desarrollo preli-minar y anteproyecto. La prórroga había sido solicitada por el Desarrollador, quien adujo que era necesaria para cumplir con ciertos requerimientos exigidos por la propia agencia. Por último, el 6 de marzo de 2002, ARPe emitió el permiso de urbanización del proyecto en controversia.
Aproximadamente un año y medio después, el 24 de no-viembre de 2003, la Comisión presentó una demanda de injunction preliminar y permanente para impugnar la con-sulta de ubicación aprobada por la Junta de Planificación, *1024 el anteproyecto y el desarrollo preliminar autorizado por ARPe. En su demanda, alegó que la Junta de Planificación incumplió con su deber ministerial de consultar a los ciu-dadanos de Caimito y de celebrar vistas públicas, lo cual, según la Comisión, constituye una violación al debido pro-ceso de ley. Al amparo de ello, reclamó la revocación de los permisos concedidos.
La Comisión argumentó que, conforme a un acuerdo emitido por ARPe el 9 de agosto de 2001 como parte de los procedimientos administrativos relacionados a otro pro-yecto, la agencia la autorizó como interventora “en los asuntos y proyectos de desarrollo de construcción dentro de las inmediaciones del sector Caimito del Barrio Río Piedras”. Apéndice, pág. 158. No obstante, alegó que no fue notificada de la determinación tomada por la agencia el 15 de agosto del 2000 ni de ninguna otra determinación posterior.
De la autorización se deduce que el alegado reconoci-miento se dio en el contexto del procedimiento administra-tivo llevado a cabo por ARPe para el proyecto Flores de Montehiedra, propuesto por la compañía A.H. Development. En el mencionado acuerdo —con fecha de 9 de agosto de 2001, fecha posterior a la aprobación del an-teproyecto— ARPe autorizó a la Comisión como interven-tora “en los asuntos y proyectos de desarrollo de construc-ción dentro de las inmediaciones del Sector Caimito del Barrio Río Piedras y muy en particular al caso 97 — 17-A-601-CPCU y otros relacionados”. Apéndice, pág. 158.
Examinado el asunto, el Tribunal de Primera Instancia desestimó la demanda mediante una sentencia sumaria parcial. A su entender, la Resolución de la Junta de Plani-ficación en la cual se aprobó la consulta de ubicación ad-vino final y firme luego de que la Comisión no ejerciera su derecho a la revisión judicial dentro de los treinta días de haber sido notificada. Por tal razón, concluyó que no tenía jurisdicción sobre el asunto. Además, le aplicó la doctrina *1025 de incuria a la Comisión por intentar impugnar la Resolu-ción de la Junta de Planificación cuarenta y cuatro meses después de ésta haber sido emitida.
En cuanto a las alegaciones relacionadas con el procedi-miento ante ARPe, el tribunal de instancia expresó que lá Comisión no había presentado una solicitud formal para intervenir en el mismo. De igual forma, resolvió que la Comisión incurrió en incuria al impugnar el anteproyecto y desarrollo preliminar transcurridos más de tres años desde su aprobación y al impugnar el permiso de urbanización casi dos años después de éste haber sido aprobado. En sus conclusioñes de derecho, el tribunal expresó que las actua-ciones de la Comisión al acudir al tribunal años después de advenir finales y firmes las determinaciones de la Junta de Planificación y de ARPe, teniendo conocimiento de las mis-mas, demuestrán un claro menosprecio por los mecanismos procesales establecidos por ley para el ejercicio de sus derechos.
Inconforme, la Comisión recurrió en apelación al Tribunal de Apelaciones y solicitó la revocación de la sentencia sumaria parcial emitida por el tribunal de instancia. En sus señalamientos de error, sostuvo que erró el juez de ins-tancia al no declarar nula la consulta de ubicación expe-dida por la Junta de Planificación, por haberse incumplido con el requisito de vista pública y notificación de colindantes. Además, alegó que existía controversia sus-tancial sobre hechos materiales, por lo que el tribunal no debió dictar sentencia sumariamente.
El Tribunal de Apelaciones confirmó la sentencia de ins-tancia y aplicó la doctrina de cosa juzgada. Dicho foro ex-presó que, por la Comisión no ejercer su derecho a la revi-sión judicial con relación a la Resolución de la Junta de Planificación, ésta advino final y firme, por lo que le era aplicable la doctrina de cosa juzgada. Determinó que no había controversia en cuanto a que la Comisión nunca im- *1026 pugnó en los tribunales la determinación de la Junta de Planificación.
Tras solicitar infructuosamente la reconsideración del dictamen, la Comisión acude ante nos y solicita su revocación. En sus señalamientos de error alega que la de-terminación de la Junta de Planificación es nula debido a que ésta no celebró vistas públicas ni notificó debidamente a los colindantes. A su vez, cuestiona la aplicación de la doctrina de cosa juzgada hecha por el foro apelativo, así como la disposición sumaria del asunto por parte del tribunal de instancia. Por último, alega que erró el foro apela-tivo al no atender separadamente su reclamo relacionado a la falta de notificación por parte de ARPe.
En atención a dichas alegaciones, la Opinión del Tribunal revoca la sentencia del Tribunal de Apelaciones y de-vuelve el caso a ARPe para que la agencia reabra todo el procedimiento administrativo y le dé la debida participa-ción a la Comisión. Al así resolver, la Opinión amplía la definición de “parte” para la notificación de una determi-nación administrativa y rechaza la aplicación de la doc-trina de incuria por entender que la Comisión no demostró dejadez o negligencia en el reclamo de sus derechos. Esto a pesar del hecho innegable de que la Comisión presentó su demanda cuarenta y cuatro meses luego de la aprobación de la consulta de ubicación por parte de la Junta de Plani-ficación, tres años luego de que ARPe aprobara el antepro-yecto y casi dos años luego de la aprobación del permiso de urbanización.
No estamos de acuerdo con el curso de acción del Tribunal al ampliar forzadamente la definición de “parte” por entender que dicho proceder constituye una amenaza para la estabilidad de nuestro sistema administrativo. Tampoco podemos endosar las razones expuestas en la Opinión del Tribunal para no aplicar la doctrina de incuria a mía parte que claramente fue negligente en el reclamo de sus dere- *1027 chos y que no utilizó los mecanismos procesales provistos por ley para la revisión de las determinaciones administra-tivas en los tribunales.
II
En el caso de autos no está en controversia el hecho de que la Comisión no solicitó intervención formalmente en el procedimiento adjudicativo ante ARPe y que, por ende, nunca fue reconocida como tal por dicha agencia. Por otro lado, consideramos que dicha agrupación tampoco cumplió con los requisitos para ser considerada “parte” de un re-curso de revisión judicial. La Comisión no demostró que tuviese -on interés legítimo para poder participar en cali-dad de “parte” en esa etapa de los procedimientos adminis-trativos que se estaban llevando a cabo en ARPe.
Nótese que existe una diferencia entre lo que constituye una “parte” para poder participar en el procedimiento ad-ministrativo y “parte” para los procedimientos posteriores de revisión judicial. La Sec. 1.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.) define “parte” como toda persona o agencia autorizada por ley a quien se dirija específica-mente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya presentado una petición para la revi-sión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. 3 L.P.R.A. see. 2102. En conformidad con la L.P.A.U., hemos reiterado que no sólo el promovente, el promovido, el interventor y aquel designado como tal se consideran “parte” en un procedi-miento administrativo.
Como hemos afirmado, “es ‘parte’ aquel que participa activamente en un proceso administrativo adjudicativo y cuyos derechos y obligaciones pueden verse afectados por la actuación de la agencia”. J.P. v. Frente Unido I, 165 D.P.R. *1028 445, 464 (2005). Véase Lugo Rodríguez v. J.P., 150 D.P.R. 29, 43 (2000).
En Lugo Rodríguez v. Frente Unido I, nos expresamos sobre quiénes son “parte” para que se les notifique de un recurso de revisión judicial. En esa ocasión, distinguimos el participante activo de un mero participante y conclui-mos que el mero participante no es parte y, por lo tanto, no tiene que ser notificado de un recurso de revisión judicial. En aquella ocasión aclaramos que no son “parte” a quienes tenga que notificárseles copia de los recursos de revisión judicial: (1) el mero participante; (2) el amicus curiae; (3) . aquel que comparece a la audiencia pública sin mayor in-tervención; (4) aquel que únicamente declara en la vista sin demostrar ulterior interés; (5) aquel que se limita a suplir evidencia documental, y (6) aquel que no demuestre tener un interés que pueda verse adversamente afectado por el dictamen de la agencia. Id.
Por lo tanto, si bien es cierto que hemos adoptado como política pública propiciar una participación amplia en los procedimientos administrativos de todo aquel que tenga un interés que pueda ser afectado por la determinación administrativa, esto no convierte a todo el que participa en un procedimiento administrativo en “parte” de la revisión judicial de la acción administrativa. Véase Junta Dir. Portofino v. P.D.C.M., 173 D.P.R. 454 (2008). Sobre el particular, el profesor Demetrio Fernández opina que “una parte puede carecer de legitimación activa para participar en la revisión judicial, pero puede ser considerada como “agra-viada” e interesada en participar e intervenir en el proceso administrativo. D. Fernández Quiñones, Derecho adminis-trativo y Ley de Procedimiento Administrativo Uniforme, 2da éd., Bogotá, Ed. Forum, 1993, pág. 145.
De esta forma, se puede dar amplia oportunidad para participar a todo el que esté interesado en los procedimien-tos y que pueda ser afectado por la determinación adminis- *1029 trativa, sin hacer inmanejables o demasiado onerosos los procedimientos posteriores de reconsideración y revisión judicial. Es decir, se debe reconocer de forma liberal el de-recho de los ciudadanos a participar en los procedimientos administrativos, pero debemos estar claros de que no cual-quier tipo de participación los convierte en “parte” para la revisión judicial. Véase Junta Dir. Portofino v. P.D.C.M., supra.
Cónsono con lo anterior, en otras ocasiones nos hemos negado a reconocer como parte a una persona o entidad por el mero hecho de haber sido consultada o haber sido notificada de la determinación final de la agencia. Véase Rivera v. Morales, 149 D.P.R. 672 (1999).(1) De igual forma, le hemos negado la condición de “parte” en un recurso de revisión a varias personas y entidades por éstas haber sido notificadas de acuerdo con el requisito reglamentario de notificación a vecinos por encontrarse dentro de un radio de cien metros del proyecto propuesto. Junta Dir. Portofino v. P.D.C.M., supra.
En el caso de autos, el expédiente demuestra que la Co-misión expresó su oposición al proyecto propuesto y que sus preocupaciones fueron atendidas y contestadas por los funcionarios correspondientes en ARPe. Las referidas co-municaciones entre la Comisión y varias agencias del Go-bierno, incluso ARPé, están recogidas en varias cartas en las que la Comisión se concentra en solicitar la anulación de la consulta de ubicación aprobada por la Junta de Pla-nificación, a pesar que dicha consulta advino final y firme, dado que la Comisión no recurrió en revisión administra-tiva.
*1030 Por ejemplo, en una carta de 1 de agosto de 2001, la Comisión se opuso a una prórroga del permiso preliminar solicitada por el desarrollador. Entre las razones expuestas para oponerse, la Comisión reprodujo los mismos argu-mentos que alegó en una moción de reconsideración ante la Junta de Planificación, reconsideración que fue declarada “no ha lugar” y de la cual la Comisión no recurrió en revi-sión administrativa. En cuanto al anteproyecto presentado ante ARPe, alegó que no cumplía con la consulta de ubica-ción aprobada por la Junta de Planificación. Además, adujo que el proyecto propuesto era diametralmente opuesto al estilo de vida de los vecinos de Caimito y al carácter de la calle. ARPe contestó dicha carta e indicó que tomaría en consideración las objeciones expuestas por la Comisión.
De igual forma, la Comisión abogó porque —en lugar del proyecto propuesto— se diera paso a la construcción de una nueva escuela en los terrenos en controversia, por lo que solicitó se transfirieran los derechos de desarrollo y se archivara la consideración del proyecto. A estos efectos, en-vió una carta a ARPe de 29 de octubre de 2001. Dicho re-clamo fue reiterado por la Comisión en una carta dirigida al administrador de ARPe con fecha de 31 de enero de 2003. En su misiva, la Comisión admitió conocer el ante-proyecto de construcción expedido por ARPe y alegó que el proyecto fue expedido sin habérsele notificado.
De lo anterior se deduce que la Comisión participó por medio de comunicaciones escritas —en las que expresó sus preocupaciones para con el proyecto propuesto— y tuvo co-nocimiento de los procedimientos que se estaban llevando a cabo en ARPe. No obstante, esa limitada participación en el proceso no la convirtió automáticamente en “parte” para fines de la notificación de la determinación de la agencia o de un recurso de revisión judicial. Resolver de otra forma —tal y como hace una mayoría de este Tribunal hoy— se-ría revocar sub silentio una norma jurisprudencial sólida y *1031 claramente establecida en casos como J.P. v. Frente Unido I, supra, y en Lugo Rodríguez v. J.P., supra.
Nótese que la alegada participación se circunscribió a unas cartas en las que hizo constar sus preocupaciones con el desarrollo. De ninguna manera podemos endosar la tesis de que ese nivel de participación sea suficiente para que se le considere “parte” para los procedimientos posteriores de revisión judicial, sin que haya mediado una solicitud formal para intervenir en el proceso. De hecho, conviene re-cordar que —tal como hemos mencionado— la autorización a la que hace referencia la Comisión y donde se alega que ARPe la reconoce como interventora en todos los proyectos en el Sector Caimito, se dio en el contexto de otro procedi-miento administrativo no relacionado al caso de autos y en fecha posterior a la aprobación de los permisos en controversia.
No obstante, aún si para fines argumentativos conclu-yéramos que la Comisión era parte a quien debía notificár-sele la resolución de ARPe, la L.P.A. U. establece, en térmi-nos inequívocos, que la revisión judicial es el recurso exclusivo para revisar los méritos de una decisión administrativa. 3 L.P.R.A. sec. 2172. Véase, además, Rafael Rosario & Assoc. v. Depto. Familia, 157 D.P.R. 306, 318 (2002). Según la propia L.P.A.U., dicha solicitud de revisión deberá ser presentada dentro del término de treinta días a partir del archivo en autos de copia de la notificación de la determinación final de la agencia. 3 L.P.R.A. see. 2172.
Si bien en pasadas ocasiones hemos expresado que una persona no puede ser obligada a agotar los remedios admi-nistrativos cuando ésta no ha participado en el proceso que se llevó ante la agencia, lo cierto es que en el caso de autos la Comisión fue parte del procedimiento ante la Junta de Planificación y tuvo conocimiento y algún grado de partici-pación en el proceso administrativo ante ARPe. En vista de ello, aun cuando no había sido notificada, la Comisión pudo *1032 haber acudido ante el Tribunal de Apelaciones para seña-lar que erró la agencia al no notificarle su determinación a pesar de haber participado en el procedimiento adminis-trativo.
Sin embargo, la Comisión nunca acudió al Tribunal de Apelaciones para revisar judicialmente la determinación de ARPe. En su lugar, presentó —años después de que la agencia tomara las determinaciones en controversia— una demanda en el Tribunal de Primera Instancia pidiendo la paralización de la obra. Fue, precisamente, de la desesti-mación de dicha demanda que la Comisión acudió en ape-lación al tribunal apelativo y no en revisión judicial. De esa forma, la Comisión no utilizó el remedio adecuado en ley para revisar las determinaciones administrativas en con-troversia y dejó que los dictámenes que se alegaba le per-judicaban advinieran finales y firmes. Por tal razón, el Tribunal de Apelaciones no tenía jurisdicción para revisar la determinación de ARPe ni la de la Junta de Planifica-ción. (2)
Consideramos que, tal como expresara el tribunal de instancia, las decisiones administrativas no están ni pue-den estar sujetas a revisión judicial indefinidamente. Cuando éstas advienen finales y firmes, los foros judiciales pierden jurisdicción para revisarlas. La estabilidad jurí-dica y la confianza que las partes deben tener en las actuar ciones de las agencias gubernamentales así lo requieren.
*1033 HI
Ahora bien, la Comisión alega que por no haber sido notificada oficialmente de la determinación de la agencia, los términos para pedir la revisión judicial no se han activado. Nuevamente, si para fines argumentativos con-cluyéramos que la Comisión debió ser notificada de la de-terminación administrativa en calidad de “parte”, de todas maneras tendríamos que concluir que tampoco le asiste la razón en cuanto a dicho señalamiento. Debemos recordar que, si bien una notificación defectuosa impide que decurse el término para acudir en revisión, el término dentro del cual debe interponerse el correspondiente recurso queda sujeto a la doctrina de incuria. Véanse: IM Winner, Inc. v. Mun. de Guayanilla, 151 D.P.R. 30, 39 (2000); Colón Torres v. A.A.A., 143 D.P.R. 119, 124 (1997); Rivera v. Depto. de Servicios Sociales, 132 D.P.R. 240, 247 (1992); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53, 59 (1978).
La doctrina de incuria se define como la dejadez o negli-gencia en el reclamo de un derecho, el cual, en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad. IM Winner, Inc. v. Mun. de Guayanilla, supra; Colón Torres v. A.A.A., supra. Por lo tanto, aun cuando los términos para solicitar revisión de la deter-minación de una agencia no pueden correr ante una noti-ficación defectuosa, lo cierto es que una persona que alega debió ser notificada de una determinación administrativa y que tenía conocimiento de ésta, no puede cruzarse de brazos y esperar años antes de acudir al tribunal a impug-nar la determinación.
En el caso de autos, precisamente, ARPe aprobó el an-teproyecto propuesto el 15 de agosto de 2000 y, a pesar de tener conocimiento de los procedimientos ante ARPe, la Comisión todavía no ha presentado recurso de revisión al-guno ante el Tribunal de Apelaciones. Por el contrario, la *1034 Comisión optó por presentar ante el foro de instancia una demanda de injunction preliminar y permanente mediante la cual solicitó la paralización de la construcción del pro-yecto propuesto. Dicha demanda —tal y como hemos seña-lado— además de no ser el recurso adecuado, fue presen-tada cuarenta y cuatro meses luego de que la Junta de Planificación aprobara la consulta de ubicación, tres años después de que ARPe aprobara el anteproyecto y casi dos años luego de la aprobación del permiso de urbanización.
Las actuaciones de la Comisión, al no utilizar el meca-nismo legal correspondiente para revisar la determinación administrativa y no presentar oportunamente un recurso de revisión, resultan patentemente negligentes y denotan dejadez en el reclamo de sus derechos. Por tal razón, al igual que hizo el tribunal de instancia, le aplicaríamos a ésta la doctrina de incuria.
IV
Por último, resulta preocupante e irrazonable el reme-dio concedido por la Opinión del Tribunal. Conforme a ésta, el caso debe ser devuelto a ARPe para que se reabra todo el procedimiento administrativo y se le dé participación a la Comisión. Esto implica conceder el remedio solicitado por la Comisión en su demanda de “injunction”, a saber, la re-vocación de los permisos ya otorgados. Como expresamos anteriormente, independientemente de cómo la opinión del Tribunal llame el remedio concedido, en efecto se trata del remedio extraordinario del “injunction”, y hoy la opinión lo concede sin discutir los criterios para emitirlo.
Entendemos que reabrir todo el procedimiento en esta etapa sería una medida muy onerosa para todas las partes, sobre todo ante el hecho de que este caso se encuentra ante la consideración del Tribunal desde el 2005 y el proyecto de vivienda ha estado paralizado desde entonces. Además, es una medida innecesaria ya que, según la propia Opinión *1035 del Tribunal, la Comisión —a pesar de no haber solicitado intervención formalmente en el procedimiento adjudicativo en controversia— tuvo conocimiento del procedimiento ad-ministrativo y participó de éste.
Es precisamente a base de esa participación de la Comi-sión que la Opinión del Tribunal justifica su condición de “parte” en el procedimiento administrativo. Por lo tanto, aun si se revocara la sentencia del Tribunal de Apelacio-nes, sería suficiente con devolver el caso a ARPe para que la agencia notifique nuevamente a la Comisión y no para que se reabra todo el procedimiento administrativo.
Por último, es necesario aclarar que nuestras objeciones nada tienen que ver con los méritos que pudieran tener los reclamos que hace la Comisión en nombre de los vecinos del Sector Caimito. De hecho, no vemos cómo alguien no pueda simpatizar con la idea de que nuestras comunidades sean tomadas en cuenta en los procesos decisorios relacio-nados con los planes de desarrollo de su vecindario. No obstante, las comunidades deben procurar utilizar los me-canismos legales provistos para ello y actuar oportuna y diligentemente para mantener la seguridad jurídica y la confianza que los ciudadanos deben tener en las actuacio-nes de las agencias administrativas. Distinto a lo que pa-rece ser la Opinión de este Tribunal, creemos que cuando las decisiones administrativas advienen finales y firmes los foros judiciales pierden jurisdicción para revisarlas.
Como resultado de todo ello, disentimos de la opinión emitida por el Tribunal.

 En ese caso la Junta de Planificación le había consultado a varias agencias y entidades durante el transcurso del procedimiento administrativo y le había notifi-cado su resolución final a algunas de éstas. Sin embargo, este Tribunal expresó que la Junta de Planificación no estaba obligada a notificarles, ya que en la definición de “parte” contenida en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico no caen las entidades consultadas por la Junta.

 Es evidente que la Comisión de Ciudadanos al Rescate de Caimito tampoco tenía a su disposición el recurso extraordinario del injunction pues, tal como deter-minó el tribunal de instancia al desestimar la demanda, la Comisión no cumplió con los requisitos del recurso extraordinario del injuction, en particular, la inexistencia de un remedio adecuado en ley. Véanse: Plaza Las Américas v. N & H, 166 D.P.R. 631 (2005); Mun. de Ponce v. Gobernador, 136 D.P.R. 776 (1994); P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200 (1975).