EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ocean View at La Parguera, Inc.; Vecinos Isleños para un Desarrollo y Ambiente (VIDAS)<br><br>    Recurridos<br><br>            v.<br><br>Pascual García-Proyecto Reina Del Mar<br><br>    Peticionaria<br><br>Junta de Planificación<br><br>    Agencia Recurrida | Certiorari<br><br>2004 TSPR 48<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-1999-891
          Cons. CC-1999-893

Fecha: 31 de marzo de 2004

Tribunal de Circuito de Apelaciones:
                    Circuito Regional IV

Juez Ponente:
          Hon. Jocelyn López Vilanova


Abogados de la Parte Peticionaria:
          Lcdo. Daniel Martínez Oquendo
          Lcdo. Benjamín Hernández Nieves

Abogados de la Parte Recurrida:
          Lcdo. Romano A. Zampierollo Rheinfeldt
          Lcda. Leonor Porrata Doria
          Lcda. Ileana Fontánez Fuentes

Abogada de la Agencia-Recurrida:
          Lcda. Everlidys Rodríguez Pacheco



Materia: Revisión procedente de la Junta de Planificación



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ocean View at La Parguera, Inc.;
Vecinos Isleños para un Desarrollo
y Ambiente (VIDAS)

    Recurridos

       v.

| Pascual García-Proyecto Reina | CC-1999-891 | Certiorari |
| Del Mar | CC-1999-893 | |
| | Cons. | |

    Peticionaria

Junta de Planificación

    Agencia Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor CORRADA DEL RÍO

San Juan, Puerto Rico, a 31 de marzo de 2004.

Nos corresponde determinar cuáles son los requisitos para que un proyecto cualifique como "Desarrollo Extenso", conforme a la Sección 2.01 del Reglamento de Zonificación de la Junta de Planificación de Puerto Rico, 23 R.P.R. § 650.1648(59). Además, nos toca resolver si esta agencia puede aprobar determinada consulta de ubicación mediante una "exclusión categórica", sin referir la misma a la Junta de Calidad Ambiental para que ésta certifique que el proyecto contemplado no tiene un impacto ambiental significativo, y que se puede obviar el trámite de evaluación ambiental, determinación de impacto ambiental no-significativo, y declaración de impacto ambiental.

I

El 12 de junio de 1998, el señor Pascual García (en adelante, "el proponente")—por conducto de la firma Lombardo Pérez & Associates, y amparándose en la reglamentación vigente—presentó ante la Junta de Planificación de Puerto Rico (en adelante, "JP") la Consulta de Ubicación Número 98-57-0574-JPU. Dicha consulta se formuló con el fin de evaluar un proyecto residencial multifamiliar en el barrio La Parguera del pueblo de Lajas, a ubicarse en los solares 1,2,3 y 4 de la Urbanización Villa del Caribe de ese municipio.  Los terrenos objeto de la consulta se encuentran dentro de un Distrito de Desarrollo Turístico Selectivo (en adelante, "DTS").[1]

El proyecto en cuestión consta de cinco (5) edificios de apartamentos, de tres (3) niveles cada uno, para un total de cuarenta y cinco (45) apartamentos.  Asimismo, éste vislumbra un área para noventa (90) estacionamientos, dos (2) piscinas y un espacio para entretenimiento pasivo.  Se estima que los trabajos de construcción se completarán en un período de diez (10) meses, y que el proyecto generará veinte (20) empleos en su fase de construcción y diez (10) en su fase de operación.[2]

Como parte del proceso de consulta de ubicación ante su consideración, la JP requirió los comentarios de varias agencias gubernamentales.  Conforme a ello, la Autoridad de Acueductos y Alcantarillados señaló que "la parte proponente

---

[1] Para la definición de este tipo de distrito, *véase* página 15, *infra.*

[2] El proyecto tiene un costo estimado de $3,500,000.00, a ser financiado por la banca privada.  *Véase* Apéndice del Caso CC-1999-0893, a la pág. 49.

deberá mejorar y/o hacer aportaciones para los sistemas de acueducto y alcantarillado sanitario existentes e instalar cloacas fuera del lugar del proyecto."[3]

Por su parte, la Autoridad de Carreteras informó que su programa de construcción para los próximos cinco (5) años no contempla proyecto alguno que afecte el desarrollo de referencia.[4]  Además, señaló que se deberá consultar al Municipio de Lajas en relación con los accesos por las vías municipales, y que se deberán hacer las mejoras a la infraestructura vial.[5]

Asimismo, el Instituto de Cultura Puertorriqueña requirió un estudio arqueológico Fase 1-A y 1-B, mientras que la Autoridad de Energía Eléctrica no objetó de ningún modo la consulta de ubicación.[6]

El Departamento de Recursos Naturales, sin embargo, mantuvo en suspenso su aprobación e indicó a la JP lo siguiente:

> [e]l área propuesta ubica dentro de los límites del Área de Planificación Especial del Suroeste, Sector Parguera.  En cumplimiento con la Ley sobre Política Pública Ambiental, Ley Núm. 9 del 18 de junio de 1973, se requiere la preparación de un documento ambiental, el cual deberá incluir, pero sin limitarse, entre otros, los siguientes aspectos:
>
> 1. Impacto del proyecto sobre el Área de Planificación Especial y el Bosque Estatal de Boquerón
> 2. Sistemas ecológicos a impactarse
> 3. Flora y fauna
> 4. Cuerpos de agua

---

[3] *Id.*

[4] *Id.*

[5] El Municipio de Lajas endosó el proyecto mediante carta fechada de 3 de agosto de 1998. *Id.*, a la pág. 50.

[6] *Id.*, a la pág. 49.

> Una vez se presente el documento ambiental aquí solicitado, el Departamento de Recursos Naturales y ambientales procederá a completar la evaluación de éste proyecto.[7]

Posteriormente, el 23 de febrero de 1999, la JP emitió una "Declaración de Impacto Ambiental-Negativa Interna", mediante la cual afirmó que el proyecto propuesto no representaba impacto ambiental adverso significativo, y que cualificaba como exclusión categórica conforme a la Resolución R-87-10-1 de la Junta de Calidad Ambiental (en adelante, "JCA").[8] Este documento no hizo referencia, ni atendió, los señalamientos del Departamento de Recursos Naturales.

Mientras tanto, *Ocean View at La Parguera, Inc.*, (en adelante, "Ocean View") y la organización comunal denominada *Vecinos Isleños para un Desarrollo y Ambiente Sanos* (en adelante, "VIDAS") objetaron el proyecto porque, entre otras cosas:

1. trastoca el valor estético y la visibilidad del área;

2. no se ha realizado una declaración de impacto ambiental y no se ha cumplido con las disposiciones de la Ley de Política Pública Ambiental, *supra*;

3. los proponentes no han demostrado como se afectará el tránsito vehicular en el área;

4. antes de la toma de cualquier decisión se debe preparar un estudio ambiental abarcador sobre el impacto ecológico y ambiental del proyecto sobre el área.[9]

---

[7] *Id.*, a la pág. 8.

[8] Para la definición de "exclusión categórica", *véase* pág. 18, *infra*.

[9] *Véase* Apéndice del Recurso CC-1999-0893, a la pág. 50.

No obstante, la JP aprobó la consulta de ubicación mediante Resolución de 15 de abril de 1999.[10] Determinó, en esencia, que el proyecto residencial puede considerarse dentro de la zona propuesta ("DTS") por ser uno de Desarrollo Extenso, según definido en la sección 2.01 del Reglamento de Zonificación, Reglamento de Planificación Núm. 4., 23 R.P.R. § 650.1648(59) (en adelante, "Reglamento de Zonificación"). Además, la JP resolvió que el proyecto no tiene impacto ambiental significativo y que el mismo cualifica como una exclusión categórica conforme a la Resolución R-87-10-1 de la JCA, por lo que no era necesaria una Declaración de Impacto Ambiental (en adelante, "DIA"). Sin embargo, aunque la Resolución hizo referencia a los comentarios vertidos por la Autoridad de Acueductos y Alcantarillados, la Autoridad de Carreteras, la Autoridad de Energía Eléctrica, el Departamento de Recursos Naturales[11] y el Instituto de Cultura Puertorriqueño, ***en la misma no se hizo constar los comentarios emitidos por la JCA sobre el proyecto. Más aún, no se hizo constar siquiera si la JP refirió el asunto a la JCA para su evaluación.***

Insatisfechos con la aprobación de la consulta, Ocean View y VIDAS presentaron un recurso de revisión ante el entonces Tribunal de Circuito de Apelaciones (en adelante, "TCA"). Alegaron que incidió la JP al autorizar un proyecto residencial multifamiliar en un distrito clasificado como

---

[10] *Id.*, a la pág. 48.
[11] Aunque la JP hizo referencia a que el Departamento de Recursos Naturales se encuentra evaluando el proyecto,

"DTS", sin obtener los comentarios y el endoso del Departamento de Recursos Naturales. Señalaron, además, que erró la JP al aprobar la consulta de ubicación sin que se hubiese realizado un estudio ambiental, y al concluir que el proyecto cualifica como una exclusión categórica conforme a la referida Resolución R-87-10-1 de la JCA. Finalmente, indicaron que la JP incidió al aprobar el proyecto como un Desarrollo Extenso.

Mediante Sentencia de 13 de octubre de 1999, el TCA revocó la consulta de ubicación aprobada por la JP. Dicho foro determinó, en primer lugar, que la JP incidió al aprobar el proyecto propuesto como un Desarrollo Extenso, ya que entendió que éste no se enmarca dentro de la definición dada a esa clasificación en el Reglamento de Zonificación, *supra*. Específicamente, concluyó que debido a la magnitud del proyecto (45 apartamentos), éste tenía que estar ubicado en un pueblo con una población urbana censal de sobre cuarenta mil (40,000) personas. En consecuencia, teniendo Lajas una población urbana censal de escasamente 4,535 personas, se ubicaba fuera de la definición. El TCA resolvió, además, que la JP erró al no acreditar los comentarios vertidos por el Departamento de Recursos Naturales, y al no requerir un estudio ambiental adecuado. Sin embargo, dicho foro no varió la conclusión de la JP en cuanto a que el proyecto cualificaba como una "exclusión categórica."

_____

ésta aprobó la consulta de ubicación sin atender los comentarios y peticiones de dicho Departamento.

Inconforme, el proponente presentó ante este Tribunal el recurso de certiorari Núm. CC-1999-0891, formulando lo siguiente:

1.    Erró el Tribunal de Circuito de Apelaciones al dictar la sentencia cuya revocación se solicita por motivo de que la misma tuvo el efecto de revisar una determinación final, firme e inapelable de la Junta de Calidad Ambiental y obviando la presunción de corrección y legalidad que cobija a las determinaciones de los organismos administrativos, como lo fue en este caso la resolución que emitiera la Junta de Planificación el 15 de abril de 1999.[12]

2.    Erró el Honorable Tribunal de Circuito de Apelaciones al revocar la resolución emitida por la Junta de Planificación el 15 de abril de 1999 bajo el fundamento de que el proyecto propuesto bajo la consulta número 98-57-0574-JPU, no cualificaba como una exclusión categórica conforme al Reglamento sobre Declaraciones de Impacto Ambiental de Puerto Rico.[13]

Por su parte, la Junta de Planificación presentó ante nos el recurso de *certiorari* Núm. CC-1999-0893, señalando los siguientes errores:

1.    Erró el Tribunal de Circuito de Apelaciones al concluir que este proyecto en un distrito de Desarrollo Turístico Selectivo ("DTS"), debía estar en un pueblo con una población censal de sobre cuarenta mil (40,000) personas.

---

[12] A la "determinación final" que el proponente se refiere es a la Resolución R-87-10-1, aprobada por la JCA el 2 de abril de 1987, mediante la cual, como veremos más adelante, ésta aprobó un listado de acciones adjudicativas de la JP como "exclusiones categóricas."

[13] El TCA no resolvió expresamente que el proyecto no cualificaba como "exclusión categórica". Dicho foro revocó la aprobación de la consulta de ubicación porque entendió que la JP abusó de su discreción al aprobar el proyecto sin haberse realizado el estudio ambiental que recomendó el Departamento de Recursos Naturales.

        2.     Erró el Tribunal de Circuito de Apelaciones al concluir que en este proyecto debió realizarse el estudio ambiental requerido por el Departamento de Recursos Naturales y Ambientales, por ser la agencia con el peritaje en cuanto al impacto ambiental, no bastando con determinar que se trataba de una exclusión categórica.

Por recurrir ambos peticionarios de la misma sentencia, consolidamos ambos recursos mediante Resolución de 21 enero de 2000.

El 10 de diciembre de 1999, Ocean View presentó una *Solicitud de Desestimación* basada en que el proponente, señor Pascual García, no había notificado copia de su petición de *certiorari* a la Administración de Reglamentos y Permisos (en adelante, "ARPE") conforme lo requiere la Regla 39 del Reglamento de este Tribunal, 4 L.P.R.A., Ap. XXI-A, R. 39.[14] La recurrida VIDAS se hizo eco de la petición de desestimación presentada por Ocean View. Véase *Moción Uniéndonos a la Solicitud de Desestimación y Reiterándola al amparo de la Regla 32(b) del Reglamento del Tribunal Supremo*, presentada el 13 de diciembre de 1999.

El proponente replicó a la solicitud de desestimación mediante escrito presentado el 20 de diciembre de 1999. Éste reconoció que no notificó su solicitud de *certiorari* a la ARPE, pero que ello respondió a que dicha entidad no había

---

[14] Dicha Regla dispone que todo recurso que se presente ante nos se notificará a los abogados de las demás partes—o a las partes mismas si no tuvieren abogado— y que ello se hará constar en el propio escrito que se presente al Tribunal. El omitir notificar a alguna parte del proceso un escrito apelativo presentado ante este Tribunal, dentro del término dispuesto para ello, nos priva de jurisdicción para entender en el asunto. *Véase Montañez v. Policía de P.R.*,

intervenido como parte en el proceso de consulta de ubicación en controversia.

Por tanto, nos corresponde resolver, primeramente, como asunto jurisdiccional de umbral, si el proponente venía obligado a notificar a la ARPE el recurso de *certiorari* que presentara ante nos.  Es decir, ¿fue la ARPE "parte" en el proceso de consulta de ubicación llevado a cabo ante la JP? Veamos.

II

Las recurridas Ocean View y VIDAS sustentan su solicitud de desestimación en el hecho de que el TCA notificó una copia de la sentencia recurrida a todos los abogados de las partes *y* a la ARPE.  Asimismo, que tanto ellas (las recurridas) como las peticionarias (el proponente y la JP) notificaron a dicha agencia los escritos que sometieron ante el TCA.  En consecuencia, alegan que todos estos factores le confirieron a la ARPE carácter de "parte" en el proceso de marras, por lo que la falta de notificación del recurso del proponente a ésta nos privó de jurisdicción para atenderlo.[15]  No tienen razón las recurridas.

La Ley de Procedimiento Administrativo Uniforme (en adelante, "LPAU") define el término "parte" como "toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir a participar en la misma."  3 L.P.R.A. § 2102(j).  Sobre la extensión del

_____

150 D.P.R. 917 (2000); *Constructora Meléndez v. Autoridad de Carreteras*, 146 D.P.R. 743 (1998).

[15] *Véase* 3 L.P.R.A. § 2172 y la Regla 39 del Reglamento del Tribunal Supremo, *supra*.

concepto, hemos resuelto que bajo el palio de la citada ley, "parte" es: 1) a quien se dirija la acción; 2) la agencia a quien se le dirige la acción; 3) el interventor; 4) quien haya presentado una petición para revisión o cumplimiento de orden; 5) quien haya sido designado como tal en el procedimiento; y 6) aquél que participó activamente durante el procedimiento administrativo y cuyos derechos y obligaciones puedan verse adversamente afectados por la acción o inacción de la agencia. *Lugo Rodríguez v. Junta de Planificación*, 150 D.P.R. 29 (2000). Una vez determinada persona o entidad adquieren carácter de "parte", la sección 4.2 de la LPAU, 3 L.P.R.A. § 2172, y la Regla 39 de este Tribunal, *supra*, establecen que todo recurso que se presente ante nos se notificará a los abogados de éstas, o a las partes mismas si no tuvieren abogado, y que ello se hará constar en el escrito que se presenta. Incumplir con este requisito dentro del término dispuesto para presentar el recurso conlleva la desestimación del recurso por falta de jurisdicción. *Véase Montañez v. Policía de P.R.*, 150 D.P.R. 917 (2000); *Constructora Meléndez v. Autoridad de Carreteras*, 146 D.P.R. 743 (1998).

Tras referirnos al expediente, constatamos que la ARPE no fue "parte" en el proceso de **consulta de ubicación** que aquí se impugna. Es decir, la ARPE no fue parte promovida, promovente, interventora o con participación activa en esta etapa del proceso. Si se examina la Resolución emitida por la JP el 15 de abril de 1999, se constatará que ésta se refiere a la ARPE para expresar que:

...

2) La Administración de Reglamentos y Permisos determinará cuál será la próxima etapa en el trámite del proyecto, la cual deberá cumplir con todas las disposiciones de leyes, reglamentos y normas de planificación vigentes y aplicables, así como con las normas de dicha Administración.[16]

....

Luego de ello, la JP explica que:

[l]os señalamientos anteriores [conclusiones y acuerdo] se han hecho de la información disponible en estos momentos. No obstante, la Administración de Reglamentos y Permisos podrá hacer requerimientos adicionales que sean necesarios en el futuro, bien sea por situaciones que se desconocen ahora o imprevistas que pudieran surgir durante el desarrollo del proyecto en sus distintas etapas.[17]

De lo anterior surge que la mención que la JP hiciera de la ARPE, fue en referencia a las instrucciones que la primera usualmente ofrece *para cuando dicha Administración asuma jurisdicción sobre el proyecto en la etapa operacional posterior.* Ello de ninguna manera puede interpretarse como una concesión de carácter de "parte" a la ARPE. Del mismo modo, *el hecho de que una parte remita una copia de cortesía del recurso a determinada entidad—como alegan las peticionarias que hicieron con la ARPE— no convierte a ésta última en "parte" para efectos de la notificación requerida por la LPAU y el Reglamento de este Tribunal.*

Adviértase, además, que aun si la JP hubiese requerido comentarios de la ARPE a fin de informarse mejor en el proceso de consulta de ubicación—lo que no consta en récord que se haya hecho— ello de por sí no sería suficiente para

---

[16] Apéndice del Recurso CC-1999-0893, a la pág. 53.

[17] *Id.*, a la pág. 54

convertir en "parte" a esa agencia.  Según lo resuelto por este Tribunal en *Rivera Ramos v. Morales Blás*, 149 D.P.R. 672, 684-685 (1999), cuando la JP se limita a requerir los comentarios de alguna agencia que de alguna manera tenga relación con los proyectos bajo estudio, como lo permite la sección 7.01 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación,[18] dicha participación es insuficiente para concluir que se le tiene que notificar los escritos y determinaciones como si se tratase de una "parte." Por tanto, resolvemos que el recurso se presentó ante nos oportunamente y conforme a derecho.

III

Resuelto esto, procedemos a dilucidar las controversias planteadas en los recursos que hoy nos ocupan, a saber: 1) si actuó correctamente el TCA al determinar que la JP incidió al aprobar mediante la consulta de ubicación el proyecto propuesto como un Desarrollo Residencial Extenso; 2) si erró el TCA al no variar lo resuelto por la JP en cuanto a que el proyecto cualificaba como una Exclusión Categórica conforme a la Resolución R-87-10-1 de la JCA; y 3) si erró el TCA al resolver que la JP abusó de su discreción al aprobar la consulta de ubicación sin contar con el endoso del Departamento de Recursos Naturales, y a pesar de que dicho Departamento expresó unas preocupaciones relativas al impacto ambiental del proyecto.  Veamos las cuestiones planteadas por separado.

---

[18] Reglamento Núm. 5244 de 31 de mayo de 1995, 23 R.P.R. § 650.234.  Este Reglamento fue anulado por el Reglamento Núm. 6031 de 13 de octubre de 1999.  Este último no altera lo dispuesto en la sección 7.01 del Reglamento 5244.

IV

Nos corresponde determinar, en primer lugar, si erró el TCA al resolver que el proyecto presentado no cualifica como un Desarrollo Extenso.

El Artículo 11 de la Ley Orgánica de la Junta de Planificación, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. § 62j(14), según enmendada, faculta a la JP a hacer determinaciones sobre usos de terrenos dentro de los límites territoriales de Puerto Rico.  Entre las determinaciones que la JP está facultada para tomar están las relacionadas a las solicitudes de consulta de ubicación.

La Sección 2.01 del Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4, 23 R.P.R. § 650.1648(59) (en adelante, "Reglamento de Zonificación") define la "consulta de ubicación" como el procedimiento mediante el cual la JP evalúa, pasa juicio y toma la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente mediante la reglamentación aplicable. *Véase Ortiz y Gómez v. Junta de Planificación*, res. el 26 de septiembre de 2000, 152 D.P.R.____ (2000), 2000 T.S.P.R. 139, 2000 J.T.S. 151.

En el caso de marras, el proponente solicitó una consulta de ubicación para un proyecto residencial a ubicarse en un Distrito de Desarrollo Turístico Selectivo ("DTS").  El propósito del distrito DTS, según la sección 60.01 del Reglamento de Zonificación, *supra*, es facilitar la ubicación de proyectos turísticos y recreativos fuera de los ámbitos de expansión urbana, sujeto a la disponibilidad de infraestructura en el área y donde es necesario mantener el

carácter paisajista y las condiciones naturales del lugar. La sección 60.02 de dicho Reglamento establece, además, que en un distrito DTS los terrenos y edificios se podrán utilizar para los siguientes fines:

    1.    siembra de productos agrícolas;

    2.    vivienda para una familia;

    3.    venta la detal de productos cosechados;

    4.    edificios y usos accesorios de acuerdo a las disposiciones de la sección 85.00 de este reglamento;

    5.    otros usos de acuerdo a las secciones 95.00, *97.00* y 99.00 de este Reglamento.

La mencionada sección 97.00 del Reglamento de Zonificación, 23 R.P.R § 1744, se refiere a los proyectos de Desarrollos Extensos a considerarse *por la JP*.[19] A su vez, la sección 97.01 del citado Reglamento, *supra*, establece que se podrá someter a la consideración de la JP cualquiera de los tipos de proyectos que se indican en esta sección (Desarrollos Extensos) independientemente del distrito en que se propongan. Nótese, pues, que de acuerdo con estas disposiciones, el concepto de Desarrollo Extenso puede aplicarse independientemente del distrito en que se proponga el proyecto; por consiguiente, los proyectos catalogados como Desarrollos Extensos son permitidos en los distritos DTS.

Sobre este tipo de desarrollos, la sección 2.01 del Reglamento de Zonificación, *supra*, los define de la siguiente manera:

> *[s]on desarrollos extensos los desarrollos residenciales para veinte (20) o más familias*

---

[19] La sección 95.00 se refiere a proyectos de Desarrollos Extensos a considerarse por la JP o por la ARPE, y la sección 99.00 se refiere a las excepciones.

> *o solares en pueblos o áreas con una población urbana censal menor de diez mil (10,000) personas*; treinta (30) o más familias o solares en pueblos o áreas con una población urbana censal entre diez mil (10,000) a cuarenta mil (40,000) personas, y cuarenta (40) o más familias o solares en pueblos o áreas con una población urbana censal sobre cuarenta mil (40,000) personas conforme a los resultados del último censo poblacional....

El TCA determinó que el proyecto en controversia no cualificaba como Desarrollo Extenso toda vez que éste constaba de cuarenta y cinco (45) apartamentos, por lo que se requería una población urbana censal de al menos cuarenta mil (40,000) personas. Es decir, el TCA aplicó al proyecto de marras el estándar mínimo de viviendas que se requiere para un pueblo con una población urbana censal de al menos 40,000 habitantes. Erró el TCA al así resolver.

En la definición de Desarrollo Extenso antes citada, se establece el *número mínimo* de unidades a contemplarse en los desarrollos residenciales a base de la población urbana censal del pueblo en que se propone el proyecto. En otras palabras, el mínimo de residencias se determina en función de la población urbana del pueblo. Por tanto, lo primero que hay que mirar es la población urbana censal del pueblo en cuestión para así determinar cual es el *número mínimo* de residencias que se necesitan para ubicarse bajo la definición.

Así pues, en el presente caso tenemos un proyecto de cuarenta y cinco (45) apartamentos, a ubicarse en el Pueblo de Lajas, de una población urbana censal de 4,535, según el censo de 1990. Por consiguiente, el proyecto cualifica como un desarrollo extenso ya que el total de cuarenta y cinco

apartamentos cumple con el número mínimo de viviendas necesarias (veinte o más) para un pueblo de menos de diez mil habitantes.  Erró el TCA al resolver lo contrario.

V

Procede ahora determinar si incidió el TCA al no variar lo resuelto por la JP en cuanto a que el proyecto cualificaba como una Exclusión Categórica conforme a la Resolución R-87-10-1 de la Junta de Calidad Ambiental.

Las exclusiones categóricas se definen como acciones predecibles de una agencia proponente que en el curso normal de sus actividades no tendrán un impacto ambiental significativo.  *Véase* Reglamento sobre Declaraciones de Impacto Ambiental de Puerto Rico, Reglamento Núm. 3106, sección 1.6.1, 3 R.P.R. § 80.3 (en adelante, "Reglamento sobre DIAs").[20]  Ubicada una acción dentro del marco de una "exclusión categórica", el Reglamento sobre DIAs, *supra*, exime a la agencia proponente de cumplir con las secciones 3, 4 y 5 del mismo.  En otras palabras, se entiende que las actividades así clasificadas no tienen un impacto ambiental significativo, por lo que pueden ser excluidas categóricamente de cumplir con el proceso de evaluación ambiental, determinación de impacto ambiental no-significativo, y declaración de impacto ambiental.

---

[20]  El "Reglamento sobre Declaraciones de Impacto Ambiental de Puerto Rico" (Reglamento Núm. 3106 de la JCA) fue reemplazado por el "Reglamento para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales," Reglamento Núm. 6056 de la JCA.

Mediante la Resolución R-87-10-1, emitida por la JCA el 2 de abril de 1987, dicho organismo aprobó las siguientes acciones adjudicativas de la JP como exclusión categórica[21]:

1. Prórrogas a la vigencia de consulta de ubicación aprobadas;

2. Enmiendas a consulta de ubicación ya aprobadas que no conlleve variación en las condiciones que tengan impactos ambientales significativos;

3. ***Desarrollos de terrenos para uso residencial que no exceda de 50 unidades de vivienda;***

4. Desarrollo de terrenos para uso comercial que no exceda de 15,000 pies cuadrados;

5. Desarrollo de terrenos para uso industrial liviano que no exceda de 70,000 pies cuadrados. Esto estará condicionado a que no apruebe proyectos para uso industrial que generen contaminantes con efectos significativos sobre el ambiente;

6. Desarrollo de terrenos para usos institucionales incluyendo proyectos para servicios de salud, escuelas, iglesias, clubes cívicos y otros similares que no excedan de 10,000 pies cuadrados;

7. Desarrollo de terrenos para usos turísticos que no excedan de 30,000 pies cuadrados.

La JP sostuvo que debido a que el proyecto en controversia consta de cuarenta y cinco (45) unidades para uso residencial, éste se ubica bajo el palio de la citada Resolución R-87-10-1 como una "exclusión categórica," ***sin necesidad de trámite ulterior***. Dicha conclusión no encuentra base en el derecho aplicable. Veamos.

---

[21] *Véase* Apéndice del Recurso CC-1999-0893, a las págs. 258-259.

A pesar de lo dispuesto en la citada sección 1.6.1 del entonces vigente Reglamento sobre DIAs, *supra*, la sección 1.6.2 del mismo Reglamento aclara que la aprobación preliminar de una acción como "exclusión categórica" no exime a la agencia proponente de su responsabilidad de cumplir con las secciones 3,4 y 5 de ese instrumento—relativas a los procesos de evaluación ambiental, Determinación de Impacto Ambiental no Significativo y al proceso de Declaración de Impacto Ambiental— *cuando en el ejercicio de su discreción,* *la JCA entienda que es necesario.*[22] Más aún, la propia Resolución R-87-10-1, establece lo siguiente:

> [*l*]*a Junta de Planificación deberá* *someter a la Junta de Calidad Ambiental* la resolución de aquellas actividades que haya realizado y aquellos proyectos que hubiera aprobado que se encuentran bajo cualquiera de las categorías de exclusión aprobadas *como* *condición adicional* a la aprobación de estas exclusiones categóricas.
>
> *La Junta de Calidad Ambiental se* *reservará el poder que le confiere la Ley* *Número 9, supra, de pasar juicio sobre dichas* *acciones* y evaluará su cumplimiento con la Ley Sobre Política Pública Ambiental dentro del período de 20 días *de ser notificado de* *la acción por la Junta de* *Planificación*...(énfasis suplido).[23]

De las citadas disposiciones reglamentarias surge indubitadamente que la JP tiene que informar a la JCA las acciones a realizarse bajo una exclusión categórica preliminarmente aprobada, de modo que ésta agencia—como ente

---

[22] Asimismo, se condicionó la aprobación de una exclusión categórica a que la JP mantuviese en el récord de los proyectos prueba de las consideraciones ambientales de los proyectos excluidos y del procedimiento de análisis ambiental.

[23] *Véase* Apéndice del Recurso CC-1999-0893, a la pág. 259 (énfasis suplido).

encargado por ley para implementar la política pública de proteger el ambiente— evalúe las particularidades de ese proyecto y así determinar si procede que se tramite el proceso de evaluación ambiental correspondiente. Es decir, el hecho de que determinada acción se encuentre enumerada como "exclusión categórica" por una agencia, no exime a ésta del deber adicional de referir a la JCA cada proyecto que evalúa bajo dicha categoría para que ésta establezca si se requiere aplicar las secciones 3, 4 y 5 del Reglamento sobre DIAs, *supra*.

No obstante, el TCA expresó que "no surge del expediente que la Junta de Planificación hubiese consultado a la Junta de Calidad Ambiental" sobre el proyecto en controversia.[24] Asimismo, tras referirnos a la Resolución emitida por la JP el 15 de abril de 1999, y estudiar los expedientes de ambos recursos, tampoco encontramos prueba que establezca que la JP informó a la JCA del proyecto de marras para que ésta **cumpliera** con lo requerido por la ley para aprobar una "exclusión categórica." Erró la JP al así proceder.

La sección 4.5 de la LPAU, 3 L.P.R.A § 2175, establece que "las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo," mientras que "las conclusiones de derecho serán revisables en todos sus aspectos...". A tenor con este mandato, hemos establecido que si la agencia concernida observó rigurosamente los trámites prescritos por la ley, este Tribunal brindará deferencia a las acciones de ésta,

salvo que haya actuado arbitraria, ilegal, o en forma tan irrazonable que su proceder hubiese constituido un abuso de discreción. *Véase Misión Industrial v. Junta de Calidad Ambiental*, 145 D.P.R. 908, 929-930 (1998). Asimismo, hemos resuelto que ante cuestionamientos mixtos de hecho y de derecho, nos corresponde resolver si la determinación administrativa es razonable y consistente con el propósito legislativo. *Rivera Concepción v. A.R.P.E.*, res. el 29 de septiembre de 2000, 152 D.P.R. ___ (2000), 2000 T.S.P.R. 143, 2000 J.T.S. 155.

Al aplicar esta normativa al caso de autos, no podemos ser deferentes ante la decisión de la JP de aprobar la presente consulta de ubicación. Ello así toda vez que la omisión de referir la "exclusión categórica" a la JCA—para que ésta determinará si, a su discreción, se requeriría la tramitación de un proceso de evaluación ambiental— fue contrario a lo expresamente dispuesto por el entonces vigente Reglamento sobre Declaraciones de Impacto Ambiental,[25] *supra*,

---

[24] *Id.*, a la pág. 10.

[25] El "Reglamento para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales," Reglamento 6026 de la JCA, sustituto del Núm. 3106 de la misma agencia(" Reglamento sobre DIAs," entonces vigente cuando se suscitó la controversia de autos) no alteró el requisito de presentar ante la JCA el proyecto a evaluarse como "exclusión categórica." ***En todo caso, el lenguaje utilizado en el Reglamento 6026 es más explícito en cuanto a dicho requisito.*** *Véase e.g.*, la sección 234A de ese Reglamento, donde se expresa que:

> ***[l]a agencia proponente informará a la Junta de Calidad Ambiental, <u>caso por caso</u>, las acciones a realizarse bajo exclusión categórica aprobada.*** Esta notificación deberá certificar que la acción propuesta cumple con todas y cada una de las condiciones bajo las que tal exclusión fue concedida. Esta certificación será firmada

por la propia Resolución R-87-10-1 que la JCA aprobó para la JP, y por ende, contrario al mandato del cuerpo legal sobre el cual ambas se sustentan: la "Ley sobre Política Pública Ambiental," 12 L.P.R.A. § 1121, según enmendada, (en adelante, "Ley Núm. 9"). Esta ley implementa, a su vez, el precepto constitucional que establece que "será política pública del Estado Libre Asociado la más eficaz conservación de los recursos naturales, así como el mayor aprovechamiento de los mismos para el beneficio general de la comunidad." Const. E.L.A., Art. VI, § 19.

El incumplimiento de la JP es particularmente sensitivo en este caso, toda vez que la Ley Núm. 9, *supra*, establece que ***la JCA es la agencia designada para velar por el fiel cumplimiento de la política pública ambiental y los <u>requisitos procesales y sustantivos</u> contenidos en la misma [Ley Núm. 9] y <u>en los reglamentos</u> aprobados a su amparo***. *Municipio de Loiza v. Sucn. Marcial Suárez*, res. el 11 de junio de 2001, 154 D.P.R. ___ (2001), 2001 T.S.P.R. 84, 2001 J.T.S. 87;; *Colón Cortés v. Junta de Calidad Ambiental*, 148 D.P.R. 434 (1999); *García Oyola v. Junta de Calidad Ambiental*, 142 D.P.R. 532 (1997). Así pues, la JCA era la agencia dispuesta por ley para determinar si el proyecto en cuestión tendría un impacto ambiental significativo y, en consecuencia, establecer si el proyecto requería que se siguiese el trámite dispuesto por las secciones 3,4 y 5 del "Reglamento sobre DIAs", *supra*.

---

por el jefe de la agencia, o la persona a la que éste le haya delegado tal autoridad, o por el funcionario responsable (énfasis suplido).

En atención a que en este caso no se observaron rigurosamente los estatutos y reglamentos que rigen las funciones adjudicativas de la JP en torno a las "exclusiones categóricas",[26] resolvemos que erró el TCA al no decidir de conformidad.[27]

VI

En mérito de lo anteriormente expuesto, resolvemos que erró el TCA al determinar que el proyecto propuesto no cualificaba como Desarrollo Extenso, conforme al Reglamento de Zonificación de la JP, *supra*. Asimismo, concluimos que erró el foro intermedio al sostener que la consulta de marras podía aprobarse mediante "exclusión categórica," sin antes remitir la misma **a la JCA**, para que ésta determinara si había necesidad de cumplir con el proceso de evaluación ambiental, determinación de impacto ambiental no-significativo, y declaración de impacto ambiental. Se revoca el dictamen recurrido, y se devuelve el caso a la JP para que atienda el asunto conforme con lo expresado en esta Opinión.

Se dictará Sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

[26] *Véase Municipio de San Juan v. Junta de Calidad Ambiental*, 149 D.P.R. 263 (1999).

[27] En vista de que este curso decisorio dispone de la controversia, *quaere* si la JP abusó de su discreción al no actuar sobre los comentarios vertidos por el Departamento de Recursos Naturales sobre la consulta de ubicación.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ocean View at La Parguera, Inc.;
Vecinos Isleños para un Desarrollo
y Ambiente (VIDAS)

    Recurridos

       v.

Pascual García-Proyecto Reina      CC-1999-891   Certiorari
Del Mar                        CC-1999-893
                             Cons.

    Peticionaria

Junta de Planificación

    Agencia Recurrida

SENTENCIA

San Juan, Puerto Rico, a 31 de marzo de 2004.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que erró el Tribunal de Circuito de Apelaciones al determinar que el proyecto propuesto no cualificaba como Desarrollo Extenso, conforme al Reglamento de Zonificación de la Junta de Planificación, *supra*. Asimismo, concluimos que erró el foro intermedio al sostener que la consulta de marras podía aprobarse mediante "exclusión categórica," sin antes remitir la misma *a la Junta de Calidad Ambiental*, para que ésta determinara si había necesidad de cumplir con el proceso de evaluación ambiental, determinación de impacto ambiental no-significativo, y declaración de impacto ambiental. Se revoca el dictamen recurrido, y se devuelve el caso a la Junta de Planificación para que atienda el asunto conforme con lo expresado en esta Opinión.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton inhibido. El Juez Asociado señor Rebollo López no intervino.

                          Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo