Opinión disidente emitida por la
Juez Asociada Señora Rodríguez Rodríguez, a la cual se une el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
Confirma la opinión que anuncia este Tribunal, los estrechos senderos por los cuales marcha el derecho puertorriqueño. En esta ocasión se estrechan las vías para que un ciudadano pueda lograr ser parte de un procedimiento adjudicativo ante una agencia del Estado. La posición avalada por una mayoría de los miembros de este Foro trastoca el derecho de los ciudadanos a participar en los asuntos del gobierno que le afectan directamente y así se diluye la transparencia que debe caracterizar a las actuaciones administrativas en todo sistema democrático. En *209 vista de que no suscribo el criterio mayoritario, procedo a exponer las razones que provocan mi disenso.
HH
Es mi criterio que la posición adoptada por una mayoría de los miembros de este Foro constituye un ejercicio regresivo que lesiona el principio de liberalidad en la participación de los ciudadanos en los procedimientos administrativos.(1) La opinión mayoritaria anuncia el destierro de la figura de la participación activa y, a su vez, coloca trabas a la intervención como mecanismo para ser parte en un procedimiento adjudicativo. De esta forma, este Tribunal se aparta del principio de que las agencias deben facilitar la participación de los ciudadanos en las decisiones y los asuntos gubernamentales que les atañen.
De una parte, la mayoría resuelve que la moción intitulada “Comparecencia de los Interventores”, resentada por Mil, Inc. y Ponce Cash and Carry, no constituye una solicitud de intervención fundamentada porque incumplió las exigencias de la sección 3.5 de la Ley Núm. 170 de 12 de agosto de 1988(2) (Ley de Procedimiento Administrativo Uniforme). Una lectura de la moción revela que, contrario a lo resuelto por este Tribunal, Mil, Inc. y Ponce Cash and Carry establecieron un interés legítimo en el procedi *210 miento adjudicativo y fundamentaron su solicitud de intervención.(3)
Primero, en esta moción, los peticionarios expresaron que Mil, Inc. era propietaria de un centro comercial, ubicado en la carretera Núm. 153 de Santa Isabel, en el cual Ponce Cash and Carry operaba un supermercado. Expusieron que el desarrollo del centro comercial, objeto de la consulta de ubicación, impactaría los negocios existentes y amenazaría su estabilidad. Argüyeron, además, la ausencia total de prueba sobre la viabilidad económica del proyecto.
En segundo lugar, indicaron que, en el centro comercial donde estaba ubicado Ponce Cash and Carry, quedaba disponible un espacio para alquiler de 38,000 pies cuadrados. Además, expusieron que estaba aprobada la construcción de un nuevo centro comercial, entre Coamo y Santa Isabel, el cual estaría accesible para los residentes de dicha zona. Cuestionaron la necesidad de construir el centro comercial propuesto, pues afirmaron que, a pocos minutos de éste, ubicaba la estructura destinada a uso comercial, perteneciente a Mil, Inc. la cual contaba con amplios espacios vacantes, según lo anterior, solicitaron expresamente que se les permitiera intervenir en el procedimiento de consulta.
Al referirse al escrito reseñado, la opinión califica su contenido como meras “generalidades” y afirma que aunque Mil, Inc. y Ponce Cash and Carry presentaron por escrito su posición, ello no implica que fundamentaron su solicitud de intervención. Concluye que la solicitud presentada no es conforme a derecho, porque no aborda los factores que, según la Sección 3.5 de la Ley de Procedimiento Administrativo Uniforme, supra, debe considerar la agencia para determinar si concede la intervención. Además, la posición mayoritaria afirma que la solicitud de interven *211 ción no expone hechos suficientes ni los fundamentos para sustentar la intervención de Mil, Inc. y Ponce Cash and Carry, sino que se limita a señalar las razones para éstos oponerse a la aprobación de la consulta. El análisis, por demás formalista, confunde los elementos que son suficientes para considerar una solicitud de intervención como fundamentada y aquellos factores establecidos en la Ley de Procedimiento Administrativo Uniforme, para guiar la discreción de la agencia en su determinación sobre la concesión de una solicitud de intervención. Veamos.
El mecanismo de intervención, establecido en la Ley de Procedimiento Administrativo Uniforme, posibilita que sea parte en un procedimiento adjudicativo una persona que inicialmente no figuraba como tal, mas demostró un interés particular que podría verse adversamente afectado por la determinación administrativa. Sección 1.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2102. Véanse, además: Comisión Ciudadanos v. G.P. Real Property, 173 D.P.R. 998 (2008); San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374, 391 (2001). Por otra parte, la Sección 3.5 de la Ley de Procedimiento Administrativo Uniforme, supra, dispone, en lo pertinente, que: “[c]ualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia, podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento.” Véase Rivera v. Morales, 149 D.P.R. 672 (1999). Surgen de la citada disposición dos elementos centrales. Primero, la persona que solicita intervenir debe ostentar un interés legítimo, y segundo, debe presentar una solicitud por escrito y fundamentada.
Sobre el interés legítimo, requerido por la Ley de Procedimiento Administrativo Uniforme, hemos expresado que éste goza de mayor laxitud que el requisito de legitimación activa y abarca un abanico de intereses tales como: ambientales, sociales y económicos. San Antonio Maritime v. P.R. Cement Co., supra, pág. 393. En ese tenor, reconoci *212 mos que “[e]l interés económico de un competidor preocupado por una justa y legal competencia en el mercado es, sin duda, un interés que no queda descartado por el concepto de ‘interés legítimo’ que sirve de antesala a cualquier solicitante de intervención en los procesos adjudicativos de una agencia administrativa”. Id., págs. 394-395.
Ahora bien, el hecho de que una persona ostente un interés legítimo y presente una solicitud de intervención fundamentada no implica que la agencia esté obligada a con-ceder la intervención. La Ley de Procedimiento Administrativo Uniforme enumera una serie de factores que debe considerar la agencia para determinar si concede o deniega la solicitud de intervenciómarcn.(4) Véase Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 703-704 (2000). Además, esta ley faculta a la agencia para requerir la evidencia que estime necesaria para emitir su determinación. Id.
Es preciso indicar que, si bien la Ley de Procedimiento Administrativo Uniforme establece una serie de factores para guiar a la agencia en su determinación sobre una solicitud de intervención, esta ley prescribe que los factores *213 enumerados deben aplicarse liberalmente en favor de la concesión de la solicitud. Mun. de San Juan v. J.C.A., supra. En ese tenor, este Tribunal ha reafirmado que los criterios establecidos en la Sección 3.5 de la Ley de Procedimiento Administrativo Uniforme, supra, “deben aplicarse liberalmente, de manera que se cumpla con la política pública de participación ciudadana...”. Comisión Ciudadanos v. G.P. Real Property, supra, pág. 1010. Más aún, en Comisión Ciudadanos v. G.P. Real Property, supra, pág. 1011, al expresarnos sobre el principio de liberalidad establecido en la Ley de Procedimiento Administrativo Uniforme, afirmamos que las agencias deben “facilitar la participación de aquellos ciudadanos cuyos intereses se puedan afectar por la actuación administrativa, para evitar aplicar su pericia a una información que no refleje la situación real de dichos ciudadanos”.
Una vez la agencia considere la solicitud de intervención, y decida si concederla o denegarla, tiene la obligación de notificar por escrito su determinación, así como los fundamentos para su decisión y la disponibilidad de un recurso de revisión judicial. Sección 3.6 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2156. Véase Mun. de San Juan v. J.C.A., supra, pág. 703. Cabe mencionar que la decisión que emita la agencia en relación con una solicitud de intervención es una determinación de derecho y no constituye un asunto comprendido en el marco del conocimiento especializado que se le atribuye al organismo administrativo. San Antonio Maritime v. P.R. Cement Co., supra, pág. 397.
La opinión mayoritaria soslaya examinar si la Junta de Planificación incumplió con el requisito de notificar a Mil, Inc. y Ponce Cash and Carry su determinación sobre la solicitud de intervención, pues concluye que la agencia no tenía ante sí una petición de intervención que requiriese su consideración. Recordemos, sin embargo, que el propósito medular de notificar una denegatoria a una solicitud de *214 intervención es que el solicitante pueda cuestionar la determinación de la agencia mediante un recurso de revisión judicial. Mun. de San Juan v. JCA, supra, pág. 703. Si la agencia estima que no tiene ante sí una solicitud de intervención fundamentada y, por tal razón, no notifica determinación alguna a quien solicita intervenir, privaría al solicitante de cuestionar ante el foro judicial si la agencia incurrió en un error de derecho al determinar que la solicitud no estaba debidamente fundamentada. El razonamiento acogido por la mayoría resulta circular y, evidentemente, contrario al requisito de notificación dispuesto en la sección 3.6 de la Ley de Procedimiento Administrativo Uniforme, supra.
En un intento fútil por eludir el problema de ausencia de notificación sobre la solicitud de intervención, la opinión señala que en la resolución de 10 de febrero de 1999, mediante la cual la Junta de Planificación aprobó la consulta original, esta agencia aceptó la participación de Mil, Inc. y Ponce Cash and Carry, pero no su intervención. Cabe aclarar que en su resolución, la Junta de Planificación enumeró, como parte de sus determinaciones de hechos, las distintas personas y agencias que participaron en el transcurso del proceso. Sucintamente, la agencia indicó que Mil, Inc. y Ponce Cash and Carry comparecieron a las vistas públicas, se opusieron a la aprobación de la consulta y solicitaron presentar su ponencia por escrito. Evidentemente, tal referencia no constituye una notificación fundamentada sobre la aceptación o denegatoria de la solicitud de intervención que presentaron Mil, Inc. y Ponce Cash and Carry luego de comparecer a la vista.(5)
Mil, Inc. y Ponce Cash and Carry presentaron una solicitud de intervención fundamentada que debía ser aten *215 dida por la agenda conforme a las exigencias de la sección 3.6 de la Ley de Procedimiento Administrativo Uniforme, supra. En ese tenor, no comparto la afirmación avalada por una mayoría de los miembros de este Foro, de que la solicitud presentada carecía de fundamentos que la sustentasen, por ésta no discutir los factores que enumera la Ley de Procedimiento Administrativo Uniforme como guías para que las agencias consideren las solicitudes de intervención.
Si bien la ley enumera una serie de factores que guían a la agencia al conceder o denegar la intervención, ello no implica que quien solicita intervenir deba sustentar su petición, argumentando la presencia o ausencia de cada uno de los criterios enumerados. Los requisitos establecidos en la ley no constituyen una lista de cotejo contra la cual se revisa el contenido de una moción de intervención y se va marcando cuáles se han incluido y cuáles no.
Ciertamente, no constituiría una solicitud fundamentada aquella en la que sólo se solicita intervenir en el procedimiento sin exponer los fundamentos para la petición. No obstante, Mil, Inc. y Ponce Cash and Carry presentaron una solicitud de intervención en la que expusieron un interés legítimo en participar del procedimiento adjudicativo, así como las razones que sustentaban su posición. Lo anterior es suficiente para satisfacer las exigencias de la sección 3.5 de la Ley de Procedimiento Administrativo Uniforme, supra, de que la solicitud de intervención se presente por escrito y fundamentada.
Además, la solicitud de intervención reflejaba que los solicitantes podían aportar información que, a la luz del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 6031 del Departamento de Estado, 13 de octubre de 1999 (Reglamento de Procedimientos Adjudicativos), era pertinente al proceso de consulta pendiente a la agencia. Particularmente, la Sección 4.02 del Reglamento de Procedimientos Adjudica *216 tivos, págs. 19-20, establece que, en procedimientos de consulta de ubicación referentes a facilidades comerciales, la Junta de Planificación deberá considerar, entre otros factores, lo siguiente: (1) los beneficios del proyecto propuesto para la ciudadanía; (2) la creación de empleos; (3) la actividad económica existente y aprobada en el área de mercado; (4) la saturación del mercado; (5) el efecto del proyecto para el comercio existente, y (6) el impacto ad-verso o positivo del proyecto en términos comerciales generales. Además, el Reglamento dispone que la Junta de Planificación deberá considerar la capacidad de infraestructura existente en el sector para el cual se propone el proyecto, así como la capacidad de la infraestructura propuesta. Id.
Precisamente, la moción presentada por Mil, Inc. y Ponce Cash and Carry reflejaba, de una parte, un interés legítimo de los solicitantes como competidores y ofrecía, además, a la Junta de Planificación información pertinente sobre: la actividad económica existente, el posible impacto del proyecto en el comercio de la zona y la capacidad de la infraestructura disponible. Así, pues, lo expuesto en la solicitud guarda estrecha relación con el propósito dual del mecanismo de intervención de facilitar la participación de personas, cuyos intereses puedan ser afectados por la actuación administrativa y, a su vez, permitir que la agencia se beneficie de la experiencia ciudadana, de forma tal que su decisión no se realice en abstracción de las situaciones que enfrenta la ciudadanía.
Las razones expresadas por Mil, Inc. y Ponce Cash and Carry para oponerse a la aprobación de la consulta constituían, simultáneamente, los fundamentos que sustentaban su solicitud. La solicitud de intervención exponía razones suficientes para apoyar la intervención de Mil, Inc. y Ponce Cash and Carry en el procedimiento de consulta, por lo que correspondía a la Junta de Planificación evaluar dicha pe *217 tición —a la luz de los factores establecido por ley— y notificar su determinación al respecto.
No obstante, la Junta de Planificación aprobó la consulta sin emitir resolución alguna referente a la solicitud de intervención de Mil, Inc. y Ponce Cash and Carry.(6) La opinión mayoritaria no discute las consecuencias de tal incumplimiento, pues opta por resolver que la Junta de Planificación no tenía ante sí una solicitud de intervención fundamentada que requiriese una consideración ulterior por parte de la agencia. Tal posición no encuentra apoyo en la Sección 3.5 de la Ley de Procedimiento Administrativo Uniforme, supra, y contraviene el requisito de notificación prescrito en la Sección 3.6 de dicha ley, supra.
Además, la posición sostenida por la opinión mayoritaria admite que las agencias no consideren debidamente una solicitud de intervención presentada por quien refleja un interés legítimo en el procedimiento adjudicativo. Asimismo, vulnera el interés público de propiciar que quien pueda verse afectado por la determinación que se tome en un procedimiento adjudicativo participe efectivamente en dicho proceso, de modo que la agencia esté en posición de emitir una decisión más informada. Este interés adquiere particular relevancia en un procedimiento de consulta que implica consideraciones de política pública en la evaluación de propuestos usos de terreno y el cual puede impactar, decisivamente, el desarrollo físico, social y económico de un sector. En fin, el proceder de la mayoría constituye un retroceso al imponerle al mecanismo de intervención una rigurosidad inexistente en nuestro ordenamiento, de manera tal que se limita el acceso de la ciudadanía a la plena participación en los procesos administrativos.
*218 II
Tras trastocar la figura del interventor, mediante una interpretación restrictiva de lo que constituye una solicitud de intervención fundamentada, la opinión mayoritaria opta por el camino más radical de eliminar la participación activa como mecanismo para que una persona pueda ser parte en un procedimiento adjudicativo. Ello, a manera de dictum, pues la controversia del caso de autos nada tiene que ver con la figura del participante activo. No obstante, y en vista de que la Opinión del Tribunal insiste en discutir y descartar la figura, procederé a exponer mi criterio en cuanto a los argumentos allí esbozados.
En Lugo Rodríguez v. J.P., 150 D.P.R. 29 (2000), este Tribunal interpretó el inciso (j) de la Sección 1.3 de la Ley de Procedimiento Administrativo Uniforme, supra, el cual establece que es “parte” en un procedimiento adjudicativo
... toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. (Énfasis suplido.)
Resolvimos, entonces, que el texto de la disposición citada establece la participación como un mecanismo adicional a la intervención para que sea parte en un procedimiento adjudicativo una persona que inicialmente no figuraba como tal. No obstante, aclaramos que una mera participación en el transcurso del procedimiento era insuficiente para ser considerado parte de éste. Más bien, en Lugo Rodríguez v. J.P, este Foro resolvió que es parte en un procedimiento adjudicativo quien ostente un interés legítimo y haya participado activamente en este procedimiento, utilizando los mecanismos disponibles para defender su posición.(7) Indicamos que “un participante activo *219 es, pues, aquél que utiliza los remedios disponibles en aras de proteger su interés e interviene de forma tal en el proceso que resultaría injusto y arbitrario no considerarlo una ‘parte’ (Énfasis en el original.) íd., pág. 44. Véase Junta Dir. Portofino v. P.D.C.M., 173 D.P.R. 455 (2008).
La opinión mayoritaria revoca la norma pautada en Lugo Rodríguez v. J.P., y se inclina hacia resultados “injustos y arbitrarios”, pues anuncia que considera de mayor importancia evitar confusión en la determinación de quién es parte en un procedimiento adjudicativo. Es decir, la opinión mayoritaria excluye de la oportunidad de revisión judicial al participante activo por considerar que resulta en extremo confuso determinar si una parte ostenta un interés legítimo y ha utilizado los remedios disponibles en el transcurso del procedimiento adjudicativo para defender este interés. Véase Lugo Rodríguez v. J.P, supra, págs. 43-44.
Como apoyo para tal proceder, la opinión mayoritaria cita el análisis del Prof. William Vázquez Irizarry quien critica rigurosamente la norma pautada en Lugo Rodríguez v. J.P. Cabe referirnos a algunos pronunciamientos de ese análisis a los cuales alude someramente la opinión mayoritaria. Si bien el profesor Vázquez Irizarry crítica la figura del participante activo, éste señala que podría plantearse que las formalidades del mecanismo de intervención pueden resultar lesivas a la política de apertura de los procedimientos adjudicativos a la ciudadanía. En ese tenor, se refiere al dilema de que la solicitud de intervención puede representar
... una alternativa muy formal cuya exigencia en el caso de ciudadanos que se oponen a una consulta puede resultar una *220 imposición muy onerosa. Después de todo, el escenario que supone esta discusión es uno donde estos opositores acuden por sí mismos al proceso sin el beneficio de un representante legal que se pueda encargar de un trámite como sería solicitar intervención. W. Vázquez Irizarry, Tribunal Supremo de Puerto Rico—Análisis del Término 2007-2008: Derecho Administrativo, 78 Rev. Jur. U.P.R. 571, 596 (2009).
Además, señala que, a la claridad y certidumbre que caracterizan al mecanismo de intervención, cabría oponer que este mecanismo “supone un formalismo que resulta lesivo a una política de apertura de los procedimientos a la ciudadanía”. Vázquez Irizarry, supra, pág. 605. No obstante, según expone la mayoría, Vázquez Irizarry entiende que la norma pautada en Lugo Rodríguez v. J.P., no constituye el mecanismo adecuado para superar el problema indicado.
El profesor Vázquez Irizarry propone que el dilema puede conciliarse mediante el mecanismo de intervención si las agencias actúan “de forma proactiva en al menos (3) renglones: orientación, preparación de formularios y pronta atención”. Vázquez Irizarry, supra, pág. 605. Sostiene que “la efectividad del mecanismo de intervención no depende de que esté consignado en la LPAU, sino de que la agencia asuma una responsabilidad afirmativa de asegurarse que todas las personas que pueden tener contacto con el proceso conocen dicha alternativa”. Id. En fin, Vázquez Irizarry propone eliminar las complejidades que podría representar la figura del participante activo, pero sin lesionar el interés de apertura de los procedimientos adjudicativos a la ciudadanía. Esto último requeriría que las agencias actúen afirmativamente conforme a la propuesta del profesor Vázquez Irizarry y, además, que evalúen las solicitudes de intervención en conformidad con el principio de liberalidad prescrito en la ley.
No obstante, Vázquez Irizarry reconoce que la Ley de Procedimiento Administrativo Uniforme no exige que las agencias actúen según su propuesta. Ello implica que un *221 ciudadano que demuestra un interés legítimo y participa activamente en el procedimiento adjudicativo no tendría el remedio de revisión judicial, si la agencia opta por no actuar afirmativamente para orientarle sobre el mecanismo de intervención y sus exigencias formales. Es decir, sin una acción afirmativa por parte de las agencias, el mecanismo de intervención podría carecer de eficacia para evitar lesiones a la política de apertura de los procedimientos adjudicativos a los ciudadanos que se ven afectados por la determinación de la agencia.
Según estas circunstancias, reconocer la intervención, con las formalidades que exige, como único mecanismo para que un ciudadano pueda convertirse en parte en un procedimiento adjudicativo, supone lesiones a la política de facilitar una participación efectiva por parte de los ciudadanos que ostenten un interés legítimo en los procedimientos ante las agencias. Más aún, cuando la opinión que anuncia este Foro introduce a este ordenamiento una interpretación sumamente restrictiva sobre lo que constituye una moción de intervención fundamentada, apartándose de la naturaleza de los procedimientos administrativos y equiparándolos más a las formalidades de un procedimiento judicial.
En el marco discutido, la interpretación de la Sección 1.3 de la Ley de Procedimiento Administrativo Uniforme, adoptada por este Tribunal en Lugo Rodríguez v. J.R que reconoce la participación activa como mecanismo adicional para que una persona sea parte en un procedimiento adjudicativo, es cónsona con el interés público de posibilitar una participación efectiva en los procedimientos adjudicativos al ciudadano que pueda verse afectado por la determinación de la agencia. Además, la figura del participante activo permite superar las consecuencias lesivas a este interés que podrían ocasionar las formalidades del mecanismo de intervención.
En contraposición a lo anterior, la opinión mayoritaria alude a que la figura del participante activo ha generado *222 incertidumbre, cuando la parte que interesa recurrir de la determinación de la agencia debe identificar quién es parte para efectos de la notificación del recurso de revisión judicial. Indica que la ausencia de notificación al participante activo tenía la consecuencia “devastadora” de privar al foro apelativo de jurisdicción e implicar la desestimación irreversible del recurso; problema que la opinión afirma queda superado al eliminar la figura del participante activo.
Sin embargo, el problema al cual alude la opinión fue atendido por este Foro en Junta de Dir. Portofino v. P.D.C.M., al resolver que las agencias tienen la obligación de identificar en la resolución que emitan a quien se le notifica en calidad de parte en el procedimiento. La agencia es responsable de realizar la determinación sobre quién es parte y, así, quien interesa acudir en revisión judicial cuenta con la determinación previa del organismo administrativo sobre las partes a quienes debe notificar el recurso. No obstante, para el criterio mayoritario esta norma es insuficiente porque persiste, según se expresa en la opinión, un problema adicional. La figura del participante activo mantiene un criterio “subjetivo” para determinar quién es parte en el procedimiento adjudicativo.
Nótese que la opinión mayoritaria descarta la figura del participante activo por considerar que no se justifica mantener una norma que, según entiende la mayoría, requiere un ejercicio “subjetivo” o poco “certero” para determinar el grado de participación requerido para ser parte en un procedimiento adjudicativo. En contraposición, resalta la objetividad y certidumbre del mecanismo de intervención. Sin embargo, la opinión mayoritaria es reflejo de que el mecanismo de intervención entraña sus propias complejidades e incertidumbres. Entre ellas, determinar: (1) quién ostenta un interés legítimo, (2) qué constituye una moción de intervención suficientemente fundamentada, (3) en qué circunstancias la agencia no estaría obligada a atender una solicitud de intervención por no estar debidamente *223 fundamentada, o (4) cuándo la agenda ha abusado de su discreción al denegar la solicitud de intervención.
En ese tenor, la opinión afirma que una solicitud de intervención debe exponer hechos y fundamentos suficientes que la sustenten y demostrar “claramente” cómo se verá afectado el interés del solicitante —el cual, según el criterio mayoritario debe ser un interés “sustancial”— de forma tal que se establezca “claramente el deber de la agencia de contestarla”.(8) ¿No constituiría el análisis sobre si se ha satisfecho el grado de “claridad” y “suficiencia” requerido en la opinión, uno que podría calificar, a fin de cuentas, como subjetivo?
Ciertamente, el ejercicio que debe realizar la agencia de determinar quién es parte en el proceso adjudicativo puede resultar en ocasiones complejo. Sin embargo, soy del criterio de que la complejidad que, en determinadas circunstancias, podría entrañar resolver si, como cuestión de derecho, una persona es parte de un procedimiento adjudicativo, no constituye un fundamento suficiente para coartar vías de participación ciudadana, reconocidas en este ordenamiento. No puedo suscribir una opinión que sostiene que es preferible revocar normas establecidas, eludir la solución de cuestiones de derecho o arribar a resultados injustos bajo el pretexto de la complejidad.(9) Esa alegada dificultad nunca puede ser base para restringir derechos ciudadanos.
*224 La tesis propuesta en la ponencia mayoritaria de que hay que evitar la complejidad y erradicar las normas que, según el criterio mayoritaria, califiquen como “subjetivas” se utiliza para, nuevamente, limitar los derechos ciudadanos, mediante pronunciamientos no relacionados con las controversias ante nuestra consideración. Además, el razonamiento mayoritario obvia que, en los procesos administrativos y judiciales, las agencias administrativas y los tribunales se enfrentan a asuntos confusos y dificultosos como parte de su quehacer diario. No puede ser, entonces, que para facilitar la gestión de la agencia administrativa o un tribunal, se mengüen los derechos de las personas.
En fin, al eliminar la figura del participante activo e interpretar en términos sumamente restrictivos lo que constituye una solicitud de intervención fundamentada, este Foro se aparta de los intereses que subyacen el principio de liberalidad en la participación de los ciudadanos en los procedimientos adjudicativos. Particularmente, se restringen las vías para que ciudadanos, cuyos intereses puedan verse afectados por la determinación administrativa, puedan participar en los procesos que le conciernen directamente y obtener, eventualmente, la oportunidad de acudir en revisión judicial. Igualmente, la opinión aumenta la probabilidad de que las determinaciones de las agencias se realicen en abstracción y sin el beneficio los conocimientos y la experiencia de la ciudadanía, que podría verse afectada por su determinación.
III
En tercer lugar, no puedo suscribir la opinión mayoritaria, porque considero que son desacertados los fundamentos que esboza para confirmar la aprobación, por parte de la Junta de Planificación, de la cuarta enmienda a la consulta. Entre otros aspectos, en el recurso de certiorari, *225 los peticionarios argumentan que, al ser sustancial el cam-bio propuesto por la cuarta enmienda, la Junta de Planificación debió requerir una nueva consulta de ubicación y la preparación de una declaración de impacto ambiental. Además, arguyen que la aprobación de la cuarta enmienda no es válida toda vez que la Junta de Planificación, al to-mar su determinación, no tuvo ante sí la información requerida por la reglamentación aplicable y no emitió una resolución con determinaciones de hecho y derecho, según lo exige la Ley de Procedimiento Administrativo Uniforme.
Resuelve la opinión mayoritaria que no se cometieron los errores señalados porque, previo a la aprobación de la cuarta enmienda, la Junta de Planificación convocó la celebración de dos vistas públicas y obtuvo los comentarios de distintas agencias con relación al proyecto. Entiende que, así, la agencia tuvo ante su consideración la información suficiente para aprobar la cuarta enmienda. Me resulta incompatible la afirmación de que los procesos anteriores a la solicitud de esta última enmienda produjeron la información necesaria para su evaluación, cuando el cam-bio en los usos de las instalaciones, finalmente solicitado, no era entonces objeto de discusión.
De otra parte, la opinión enfatiza que, luego del proceso de segunda enmienda a la consulta, ya el proyecto comercial propuesto abarcaba un área superficial de ciento sesenta mil pies cuadrados. Parece insinuar, con tal señalamiento, que al no haber mayor variación en el área del proyecto no se alteraron significativamente las condiciones de la consulta. Entiendo que es contario al Reglamento de Procedimientos Adjudicativos reducir el proceso de análisis de la consulta, o de enmiendas a ésta, a evaluar el área que ocupará el proyecto propuesto.
Este Tribunal ha sostenido que un proceso de evaluación de una consulta de ubicación “debe integrar todos los elementos de planificación, incluyendo la viabilidad del *226 proyecto propuesto...”. Hatillo Cash & Carry v. A.R.Pe., 173 D.P.R. 934, 950 (2008). Además, hemos señalado que a través del mecanismo de consulta “la [Junta de Planificación] hace determinaciones de política pública mediante los procesos de adjudicación” por lo cual “la agencia debe emitir decisiones detalladas, razonadas y fundamentadas [,] disponibles al público para que sirvan de guía y puedan ser revisadas por un tribunal para limitar la discreción de la agencia”. (Énfasis nuestro.) id., págs. 948 y 949.
En ese tenor, el Reglamento de Procedimientos Adjudicativos exige que en áreas no zonificadas —como el área donde se desarrolló el proyecto objeto de la consulta que está ante nuestra consideración— debe realizarse una consulta de ubicación para “propuestos usos de terreno que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social, pudiesen afectar, significativamente el desarrollo de un sector”. Sección 2.00 del Reglamento de Procedimientos Adjudicativos, pág. 5. El propósito de la consulta es considerar de forma integral el impacto del proyecto propuesto para los escenarios indicados. Véase la Sección 3.03 del Reglamento de Procedimientos Adjudicativos, supra, pág. 15.
En vías de que la Junta de Planificación pueda realizar el análisis requerido, la sección 4.02 del Reglamento de Procedimientos Adjudicativos, supra, exige que una solicitud de consulta, referente al desarrollo de un proyecto comercial, incluya información que especifique: (1) los tipos de usos y el área neta de venta de cada tipo; (2) las características físicas del proyecto; cómo se beneficia la ciudadanía; (3) cómo el proyecto se enmarca en el contexto de la actividad comercial existente y aprobada; (4) el impacto adverso o positivo que tendrá en el área de mercado, y (5) la capacidad de infraestructura disponible y la propuesta. En el proceso de consulta la Junta de Planificación debe considerar integralmente los factores indicados.
*227 De otra parte, la Sección 7.02 del Reglamento de Procedimientos Adjudicativos, supra, la cual establece el procedimiento para la consideración de enmiendas a la consulta, dispone lo siguiente:
De surgir la necesidad de hacer cambios a un proyecto que altere la consulta aprobada se deberá someter una solicitud de enmienda a la Junta explicando en detalle la naturaleza de la enmienda y la razón para la misma, así como toda la documentación (planos, estudios etc.) pertinente y necesaria para que la Junta pueda tomar la determinación correspondiente .... Como resultado de la evaluación de los cambios propuestos y dependiendo de la naturaleza y magnitud de los mismos con relación a la consulta original, la Junta, podrá requerir la radicación de una nueva consulta y el cobro correspondiente. ... La parte proponente notificará a cualquier interventor, copia de toda la documentación sometida al radicar la enmienda sometiendo evidencia de dicha notificación a la Junta de Planificación. (Énfasis nuestro.) Id., pág. 29.
En tanto un procedimiento de enmienda altera las condiciones aprobadas en la consulta, es necesario que la Junta de Planificación evalúe la forma cómo el cambio propuesto incide o altera los distintos escenarios evaluados en el proceso inicial. Una enmienda a la consulta no puede aprobarse sólo a base de un análisis matemático de la variación en el área que abarca el proyecto e ignorar las repercusiones que tendrán los cambios en los usos propuestos. Aunque la enmienda mantenga esencialmente inalterada el área superficial de las estructuras, un cambio radical en el tipo de establecimiento comercial proyectado podría alterar significativamente las repercusiones que tendrá el proyecto en el sector.
Los objetivos del proceso de consulta exigen que la Junta de Planificación evalúe los efectos del cambio propuesto y considere si la enmienda solicitada es cónsona con la política pública. Ello requiere, a su vez, que la parte que solicita la enmienda presente una solicitud detallada acompañada de la información necesaria para que la Junta *228 de Planificación esté en posición de evaluar cómo el cambio propuesto alterará los escenarios considerados en la consulta inicial y, a su vez, determine si el cambio es de tal magnitud que requiere la presentación de una nueva consulta.
Una vez la Junta de Planificación considera una solicitud para enmendar una consulta, debe emitir su decisión mediante una resolución fundamentada. Al igual que una resolución referente a la aprobación o denegatoria de una consulta, una resolución para aprobar o denegar una enmienda a ésta debe incluir las razones y los fundamentos que la sustentan para que los tribunales podamos ejercer nuestra función revisora. No constituiría un ejercicio responsable del ejercicio de revisión judicial afirmar que es razonable una decisión administrativa expresada en una resolución que carece de determinaciones de hecho y conclusiones de derecho que la sustenten.
En la resolución emitida por la Junta de Planificación, con relación a la cuarta enmienda a la consulta, la agencia expuso que, después de analizar de los argumentos de la parte proponente, consideraba razonable la petición formulada. Tras exponer lo anterior, y aclarar que su determinación estaba condicionada al ulterior cumplimiento con la reglamentación aplicable, la Junta de Planificación autorizó, sin más, la enmienda a la consulta. No surgen de la resolución mediante la cual la Junta de Planificación aprobó la cuarta enmienda las consideraciones sobre las cuales descansa la determinación administrativa. Afirmar, bajo esas circunstancias, que la determinación de la agencia es razonable constituiría un abuso de la doctrina de deferencia judicial a las determinaciones de las agencias administrativas.(10)
*229 Por otro lado, debo puntualizar que el expediente no incluye otros documentos relativos a la solicitud de la cuarta enmienda —además de la resolución mediante la cual ésta fue aprobada— que me permitan afirmar que la Junta de Planificación tuvo ante su consideración la información suficiente, a la luz de las exigencias de la reglamentación aplicable, previo a tomar su determinación.
La Junta de Planificación es la agencia a la cual se le delegó la delicada responsabilidad de “guiar el desarrollo integral de Puerto Rico”. Art. 4 de la Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. sec. 62c). Es, pues, dicha agencia responsable del “desarrollo ordenado de nuestro país”. Hatillo Cash and Carry v. A.R.Pe., supra. Si bien, la Junta de Planificación es la agencia con el conocimiento especializado, en lo concerniente a la planificación territorial, sus determinaciones no están exentas de la revisión judicial. Debe, pues, la agencia emitir resoluciones razonadas y fundamentadas que nos permitan revisar que no ha abusado de su discreción en el ejercicio de la delicada labor que le ha sido encomendada. Porque considero que la resolución mediante la cual la Junta de Planificación aprobó la carta enmienda carece de determinaciones que nos permitan ejercer nuestra función revisora, disiento del resultado al cual arriba la opinión mayoritaria.
Además, no puedo avalar el que se utilice un caso de intervención para revocar, innecesariamente, una norma relativa al concepto “parte” en el proceso administrativo que ni siquiera estaba en controversia. Así la mayoría restringe y elimina vías de participación de la ciudadanía en los procesos administrativos, lo que, sin duda, tendrá efectos nocivos en nuestra sociedad. Disiento, en fin, porque no puedo prestar mi anuencia al curso seguido por una mayoría de los miembros de este Tribunal de cerrar puertas abiertas para una sociedad más democrática y participativa. Esa no es la tradición de este Tribunal.

 “Public participation is best understood as a challenge to the traditional management of government policy by experts in administrative agencies. From the late nineteenth century until the middle of the twentieth century, public administration in the United States was dominated by the “managerial” model in which government administrators were entrusted to identify and pursue the common good.
“A fundamental challenge for administrative governance is reconciling the need for expertise in managing administrative programs with the transparency and participation demanded by a democratic system.” T. Beierle y J. Cayford, Democracy in Practice: Public Participation in Enviromental Decisions, Washington D.C., RFF Press, 2002, págs. 2-3.

 3 L.P.R.A. sec. 2155.

 Aunque el escrito presentado por Mil, Inc. y Ponce Cash and Carry se intituló “Comparecencia de Interventores”, éste incluía una solicitud expresa para que la agencia reconociera a los comparecientes como parte en el proceso adjudicativo.

 Específicamente, la Sección 3.5 de la Ley de Procedimiento Administrativo Uniforme, supra, dispone lo siguiente:
"... La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración, entre otros, los siguientes factores:
“(a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.
“(b) Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.
“(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.
“(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.
“(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.
“(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.
“(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.
“La agencia deberá aplicar estos criterios de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención.”

 Puesto que la Junta de Planificación no notificó determinación alguna referente a la denegatoria o aceptación de la solicitud de intervención, resulta confusa la afirmación de la opinión mayoritaria de que “todas las partes confiaron en la decisión de la agencia de que las peticionarias no eran partes en el proceso administrativo.” Opinión mayoritaria, pág. 202.

 Estimo que el incumplimiento de la Junta de Planificación de notificar su determinación sobre la solicitud de intervención no acarrearía, necesariamente, la nulidad de todo el procedimiento. A pesar de que Mil, Inc. y Ponce Cash and Carry recibieron varias notificaciones relativas a los procedimientos posteriores a la consulta inicial, no fueron diligentes en cuestionar la ausencia de notificación y que no estaban siendo considerados como parte en el transcurso de los procedimientos ante la agencia.

 En esa ocasión resolvimos que son parte en un procedimiento adjudicativo:
"... (1) el promovente; (2) el promovido; (3) el interventor; (4) aquel que haya sido notificado de la determinación final de la agencia administrativa; (5) aquel que haya sido reconocido como “parte” en la disposición final administrativa, y (6) aquel que participa activamente durante el procedimiento administrativo y cuyos derechos y obligaciones puedan verse adversamente afectadas por la acción o inacción de la agencia”. Lugo Rodríguez v. J.P., 150 D.P.R. 29, 44 (2000). Véase, además, Junta Dir. Portofino v. P.D.C.M., 173 D.P.R. 455 (2008).

 Mediante estas aseveraciones la opinión le transfiere a la agencia la prerrogativa de determinar cuándo cumplir el deber prescrito en la Sección 3.6 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2156, de notificar su determinación en torno a una solicitud de intervención.

 La opinión mayoritaria no refleja, no obstante, problema alguno en aplicar la norma que prospectivamente destierra de este ordenamiento con la excusa de que resulta confusa en su aplicación. Sin mayor problema, concluye que la participación de Mil, Inc. y Ponce Cash and Carry es insuficiente para catalogarlos como participantes activos en el procedimiento, pues éstos no utilizaron los remedios disponibles para defender su posición. No obstante, y como mencioné, esta controversia traída ante nuestra consideración en el recurso de certiorari era referente a la intervención de Mil, Inc. y Ponce Cash and Carry en el procedimiento ante la Junta de Planificación. Por ello estimo innecesaria la discusión sobre si éstos debían catalogarse como participantes activos, y considero que la revocación de la norma pautada en Lugo Rodríguez v. J.P., supra, constituye un dictum, sobre todo cuando entiendo que la controversia planteada era referente a la solicitud de intervención.

 La reverencia que la opinión profesa a la norma de deferencia a las determinaciones administrativas, conduce a la posición mayoritaria al extremo de descansar en la afirmación de la Junta de Planificación, de que la solicitud sobre la cuarta enmienda es razonable, para sostener que la agencia no incurrió en abuso discreción en su determinación.